UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

CHARLES J. ANTHONY, SR.,

                            Plaintiff,
                                                        5:15-CV-00452
v.                                                      (DNH/TWD)

FEIN, SUCH AND CRANE, LLC,

                            Defendant.
_____

APPEARANCES:

CHARLES J. ANTHONY, SR.
Plaintiff *pro se*
8819 Gaskin Road
Clay, New York 13041

**THÉRÈSE WILEY DANCKS**, United States Magistrate Judge

<u>**ORDER AND REPORT-RECOMMENDATION**</u>

I.    **INTRODUCTION**

        The Clerk has submitted Plaintiff's pro se second amended complaint, fourth application

to proceed *in forma pauperis* ("IFP Application"), and a motion for appointment of counsel to

the Court for review in this civil rights action brought pursuant to 42 U.S.C. § 1983.[1]  (Dkt. Nos.

18-20.)  Plaintiff Charles J. Anthony presented his original pro se complaint against Defendant

---

        [1]  Plaintiff submitted a third IFP Application (Dkt. No. 9) in this action shortly after the
issuance of the Court's April 28, 2015, Order and Report-Recommendation, in which Plaintiff's
second IFP Application was granted solely for purposes of the initial review undertaken by the
Court.  (Dkt. No. 8.)  Plaintiff submitted the form utilized by the Northern District of New York
for his third IFP Application, and the Court granted the application in a May 28, 2015, Text
Order.  (Dkt. No. 12.)  Therefore, Plaintiff already has *in forma pauperis* status, which has not
been revoked, and his fourth IFP Application (Dkt. No. 19), which is not significantly different
from the third, is unnecessary and denied as moot.

Fein Such and Crane, LLC ("Fein Such"), for filing on April 15, 2015. (Dkt. No. 1.) Before the Court had acted upon Plaintiff's initial pro se complaint, he presented an amended/supplemental complaint for filing and a second IFP Application, both of which were submitted to the Court for review by the Clerk. (Dkt. Nos. 5 and 6.) Even though Plaintiff's original complaint was superseded by his amended/supplemental complaint, because of his pro se status, the Court considered the allegations in both complaints in its initial review pursuant to 28 U.S.C. § 1915(e)(2)(B). (Dkt. No. 8.)

Upon initial review, the Court recommended, *inter alia*, that Plaintiff's amended/supplemental complaint be dismissed with leave to amend. *Id*. at 8-9. The District Court accepted the recommendation and dismissed Plaintiff's amended/supplemental complaint with leave to file a second amended complaint asserting a claim under the Fair Debt Collection Practices Act. (Dkt. No. 11 at 2.) Plaintiff has now submitted his second amended complaint for initial review under 28 U.S.C. § 1915(e)(2)(B) and for the reasons explained herein the Court recommends that the second amended complaint (Dkt. No. 18) be dismissed with leave to amend. In addition, the Court denies Plaintiff's motion for appointment of counsel. (Dkt. No. 20.)

## II.     LEGAL STANDARDS FOR INITIAL REVIEW

As explained in the Court's earlier Order and Report-Recommendation in this case (Dkt. No. 8), 28 U.S.C. § 1915(e) directs that when a plaintiff proceeds *in forma pauperis*, "the court shall dismiss the case at any time if the court determines that . . . the action . . . (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B)(i)-(iii).

To survive dismissal for failure to state a claim, a complaint must plead enough facts to state a claim that is "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While Rule 8(a) of the Federal Rules of Civil Procedure, which sets forth the general rules of pleading, "does not require detailed factual allegations, . . . it demands more than an unadorned, the-defendant-harmed-me accusation." *Id*. In determining whether a complaint states a claim upon which relief may be granted, "the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor." *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir. 1994) (citation omitted). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*.

Where a plaintiff proceeds *pro se*, the pleadings must be read liberally and construed to raise the strongest arguments they suggest. *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008) (citation omitted). A *pro se* complaint should not be dismissed "without giving leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 795 (2d Cir. 1999) (citation and internal quotation marks omitted). An opportunity to amend is not required where "the problem with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000).

### III. PLAINTIFF'S SECOND AMENDED COMPLAINT

Plaintiff's second amended complaint is captioned:

AS FOR A CAUSE OF ACTION:

**ABUSE OF DEBT COLLECTION LAWS, SPECIFICALLY THE**

## Fair Debt Collection Practices Act

(Dkt. No. 18 at 1.)

The body of the second amended complaint begins with "Plaintiff will make reference to: § 807. False or misleading representations [15 USC 1692e]." *Id.* The pleading follows with five separately numbered paragraphs. In the first paragraph, Plaintiff alleges in conclusory fashion that defendant mis-represented the legal status of "the debt" and refused his requests to "supply a legal note assigning them the authority to pursue the debt and threaten foreclosure." *Id.* at ¶ 1. Plaintiff further alleges that the only note provided after six years was "a note that is fraudulent and robo-signed, and that the alleged mortgage was recently sold by Bank of America to BSI Financial Services, which has continued the process of attempting to enforce the fraudulent note." *Id.*

In the second paragraph, Plaintiff alleges that it was implied in writing by the defendant that nonpayment of the unlawful debt would result in the seizure, foreclosure, and sale of the plaintiff's property, and that such action "was not lawful and the debt collector or creditor actively attempted to take such action." *Id.* at ¶ 2.

In the third paragraph, Plaintiff alleges that "the defendants made the threat to take action that cannot be legally taken or that is not intended to be taken." *Id.* at ¶ 3. Plaintiff further

alleges that "[t]heir attempts to foreclose were dismissed three times in Onondaga County Supreme Court, and defendants continued to report the plaintiff and his spouse to the credit agencies as 'in foreclosure.'" *Id*.

In the fourth paragraph, Plaintiff alleges that '[t]he false implication that a sale, or other transfer of any interest in the alleged debt shall cause plaintiff additional costs, including, but not limited to court and attorneys fees." *Id*. at ¶ 4.

In the fifth paragraph, Plaintiff alleges the defendant distributed written communication which "simulates and is falsely represented to be a document authorized, issued, or approved by any court, official, or agency of the United States or any State, or which creates a false impression as to its source, authorization, or approval." Plaintiff further alleges that the note provided to him and BSI Financial was "clearly fraudulent." *Id*. at ¶ 5.

The relief sought by Plaintiff includes entry of an order: (1) stopping the attempted foreclosure on his property and all negative credit reporting; (2) showing the property as paid in full; (3) compensation for the suffering of Plaintiff and his family caused by defendant, the destruction of his and his wife's credit, the loss of a $400,000 investment in a small business he and his wife intended to fund their retirement, and humiliation in the community; (4) damage to Plaintiff and his wife's physical and mental health and the near ending of their marriage as a result of their loss of forty years of savings; (5) teaching defendant a lesson by granting Plaintiff such financial relief as the court deems equitable (claiming the research shows other cases have settlement for between $2,000,000 and $17,000,000); and (6) justice to Plaintiff for defendant's treason against a citizen of the United States in attempting to foreclose on property knowing that it is backed with fraudulent documents and is time barred. *Id*. at 2-3.

**IV.     ANALYSIS**

**A.     Fair Debt Collection Practices Act Generally**

The Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, *et seq.*, "imposes civil liability on 'debt collector[s]' for certain prohibited debt collection practices." *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, 559 U.S. 573, 576 (2010). There is a split of authority in the courts as to whether the FDCPA applies to mortgage foreclosures, although the majority of Circuit Courts deciding the issue have concluded that it does apply. *See, e.g., Glazer v. Chase Home Finance LLC*, 704 F.3d 453, 460 (6th Cir. 2013) (holding that mortgage foreclosure is debt collection within the meaning of FDCPA); *Birster v. American Home Mort. Servicing, Inc.,* 481 F. App'x 579, 583 (11th Cir. 2012) (FDCPA applies to foreclosure action where debt collector demands payment of money from debtor even where the demand relates to a foreclosure proceeding); *Wilson v. Draper & Goldberg, P.L.L.C.*, 443 F.3d 373, 376 (4th Cir. 2006) (finding that the FDCPA covers mortgage foreclosures); *Kaltenbach v. Richards*, 464 F.3d 524, 529 (5th Cir. 2006) (holding that entity satisfying the definition of "debt collector" falls under the FDCPA even if enforcing security interests); *see contra Boyd v. J.E. Robert Co.,*, No. 05-CV-2455 (KAM) (RER), 2013 WL 5436969, at * 9, 2013 U.S. Dist. LEXIS 140546, at * 29-34 (E.D.N.Y. Sept. 27, 2013)[2] (collecting cases) (parting ways with the federal appellate courts that have decided the FDCPA applies to mortgage foreclosures and joining with majority of district courts finding it does not), *aff'd on other grounds*, 765 F.3d 123 (2d Cir. 2014); *Derisme*

---

[2]  The Clerk will be directed to provide Plaintiff with copies of all unpublished decisions cited herein in accordance with the Second Circuit's decision in *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

*v. Hunt Leibert Jacobson P.C.*, 880 F.Supp.2d 311, 324-25 (D. Conn. 2012) (collecting cases) (enforcer of a security interest is subject only to § 1692f(6) of the FDCPA).

The Supreme Court has held that attorneys who are regularly engaged in debt-collection litigation may be "debt collectors" for purposes of the FDCPA. *See Heintz v. Jenkins*, 514 U.S. 291, 294-95 (1995); *see also Sayyed v. Wolpoff & Abramson*, 485 F.3d 226, 230 (4th Cir. 2007) ("The FDCPA clearly defines the parties and activities it regulates. The Act applies to law firms that constitute debt collectors, even where their debt-collecting activity is litigation.")

The FDCPA provides that "any debt collector who fails to comply with any provisions of th[e] [Act] with respect to any person is liable to such person." 15 U.S.C. § 1692k(a). Successful plaintiffs may recover "actual damage[s]," plus costs and "a reasonable attorney's fee as determined by the court." *Id*. Emotional distress damages are among those recoverable as actual damages in cases alleging violation of the FDCPA. *See Woods v. Sieger, Ross & Aguire, LLC,* No. 11 Civ. 5698 (JFK), 2012 WL 1811628, at * 4, 2012 U.S. Dist. LEXIS 69972, at * 11-12 (S.D.N.Y. May 18, 2012) (collecting cases) (finding $1,000 to fairly compensate Plaintiff who suffered feelings of fear, anxiety, panic, and nervousness, as well as stomach pains, sleep loss, and headaches," as a result of defendant's calls); *Gervais v. O'Connell, Harris & Assoc.*, 297 F.Supp. 2d 435, 440 (D. Conn. 2003) (awarding $1,500 in emotional and mental distress damages).

"Additional damages," subject to a statutory cap of $1,000 for individual actions, may be awarded by the court. *Id*. Section 1692k does not provide for declaratory and injunctive relief to private litigants. 15 U.S.C. § 1692k; *see also Hecht v. United Collection Bureau, Inc.*, 691 F.3d 218, 224 n.1 (2d Cir. 2012) ("While the FDCPA explicitly provides for money damages, it does

not provide for injunctive relief in private actions.")  While the Second Circuit found that the issue of whether FDCPA permits private litigants to seek injunctive relief was not squarely presented in *Hecht*, and therefore not decided, the Court noted that every federal appeals court that had decided the issue had held that it does not.  *Id.*  (citing *Weiss v. Regal Collections*, 385 F.3d 337, 342 (3d Cir. 2004); *Crawford v. Equifax Payment Servs, Inc.*, 201 F.3d 877, 882 (7th Cir 2000); *Sibley v. Fulton DeKalb Collection Serv.*, 677 F.2d 830, 834 (11th Cir. 1982)); *see also Milton v. Rosicki, Rosicki & Assoc.*, No. 02 CV 3052(NG), 2007 WL 2262893, at * 3, 2007 U.S. Dist. LEXIS 56872, at * 8-9  (E.D.N.Y. Aug. 3, 2007) (finding that private litigant was not entitled to injunctive relief on FDCPA claim because the FDCPA does not contain an express provision for declaratory or injunctive relief).

### B.    Plaintiff's Second Amended Complaint

The elements of a claim under the FDCPA are that "(1) the plaintiff must be a 'consumer' who allegedly owes the debt or a person who has been the object of efforts to collect a consumer debt, and (2) the defendant collecting the debt is considered a 'debt collector,' and (3) the defendant has engaged in any act or omission in violation of FDCPA requirements." *Schuh v. Druckman & Sinel, L.L.P.*, 751 F. Supp. 2d 542, 548 (S.D.N.Y. 2010) (citation omitted).  The Court finds that Plaintiff has failed to state a claim against Defendant under the FDCPA.

Plaintiff appears to fall within the definition of "consumer" set forth at 15 U.S.C. § 1692a(3) in that he was "allegedly obligated to pay [a] debt."  (Dkt. No. 18 at ¶ 1.)  Although Plaintiff's second amended complaint fails to provide sufficient information for the Court to determine whether his claim involves a debt covered under the FDCPA, the Court will assume that it does solely for purposes of this initial review.

8

15 U.S.C. § 1692a(6) describes "debt collector" in relevant part as follows: "[t]he term 'debt collector' means any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another."

Plaintiff does not identify Defendant Fein Such as a law firm in his second amended complaint (Dkt. No. 18) or, it appears, in his original and amended supplemental complaints. (Dkt. Nos. 1, 5.) The Court, however, takes judicial notice that in papers filed in a related action brought by Plaintiff in the Northern District of New York, Fein Such is identified as attorney for Bank of America, N.A., S/B/M to BAC Home Loans Servicing, LP formerly known as Countrywide Home Loans Servicing L.P., in a state court foreclosure action against Plaintiff. (*See Anthony v. Murphy*, No. 5:15-CV-00450, Dkt. No. 4 at 4-8.) While attorneys who are regularly engaged in debt-collection litigation may be "debt collectors" for purposes of the FDCPA, *Heintz*, 514 U.S. at 294-95, the second amended complaint is devoid of allegations making a plausible showing that the Fein Such law firm qualifies as a "debt collector" under § 1692a(6) as required to establish a violation of the FDCPA. *Schuh*,, 751 F. Supp. 2d at 548.

Plaintiff has also failed to make a plausible showing in his second amended complaint that Fein Such has engaged in any act or omission in violation of FDCPA requirements. Plaintiff has largely parroted language from § 1692e without setting forth any specific factual allegations in support of his conclusory assertion that Defendant has violated the referenced provisions of the statute. In sum, Plaintiff's second amended complaint contains nothing more than "unadorned, the defendant-harmed-me accusation[s]." *Iqbal*, 556 U.S. at 678. His "threadbare

recitals" of certain of the elements of a cause of action under the FDCPA, "supported by mere conclusory statements," do not suffice to state a claim, and his second amended complaint therefore cannot survive initial review.

Furthermore, even if Plaintiff had stated a claim against Defendant under the FDCPA, he could not, as he is attempting to do, use the claim as a vehicle for stopping foreclosure and negative credit reporting, or declaring that the property has been paid for in full since private litigants are not entitled to declaratory and injunctive relief on FDCPA claims. *Milton*, 2007 WL 2262893, at * 3.

### C. Further Leave to Amend

Plaintiff was granted leave to amend when his amended/supplemental complaint was dismissed on initial review. (Dkt. No. 11.) Plaintiff's second amended complaint is so devoid of specific factual allegations with respect to Defendant's alleged violation of the FDCPA that there is no basis for the Court to determine with any degree of certainty whether or not, given another opportunity to amend, Plaintiff would be able to state a valid claim against Defendant under the FDCPA. *See Gomez*, 171 F.3d at 795. Given Plaintiff's pro se status and the inability to rule out completely the possibility that he could state a claim at this point, the Court recommends that he be granted one more opportunity to amend his complaint in the event he is able to set forth specific facts making a plausible showing that Defendant is a "debt collector" under the FDCPA and that Defendant violated the FDCPA, and he seeks only those monetary damages available under the FDCPA and no declaratory or injunctive relief.

The Court further recommends that in the event Plaintiff is granted leave to amend, he be instructed that the amended complaint will take the place of and effectively invalidate Plaintiff's

second amended complaint, and that the amended complaint must fully comply with Rules 8(a) and 10(a) and (b) of the Federal Rule of Civil Procedure.

### D.     Motion for Appointment of Counsel

Plaintiff has moved for appointment of counsel.  (Dkt. No. 20.)  Even if the Court were not recommending dismissal of Plaintiff's second amended complaint, a more fully developed record would be necessary before an assessment can be made as to whether counsel should be appointed.  *See Hendricks v. Coughlin*, 114 F.3d 390, 392 (2d Cir. 1997) (court must look to the likelihood of merit of the underlying dispute in determining whether to appoint counsel). Therefore, the motion is denied.  The denial is without prejudice so that Plaintiff will not be precluded from making a subsequent motion for appointment of counsel in the event the District Court allows the action to proceed on the second amended complaint or allows Plaintiff another opportunity to amend.

**ACCORDINGLY**, it is hereby

**ORDERED** that Plaintiff's Fourth IFP Application (Dkt. No. 19) is **DENIED AS MOOT**; and it is further

**ORDERED** that Plaintiff's motion for appointment of counsel (Dkt. No. 20) is **DENIED WITHOUT PREJUDICE**; and it is

**RECOMMENDED** that Plaintiff's second amended complaint (Dkt. No. 18) be **DISMISSED** upon initial review under 28 U.S.C. § 1915(e); and it is further

**RECOMMENDED** that Plaintiff be **GRANTED LEAVE TO AMEND** in the event he is able to set forth specific facts making a plausible showing that Defendant is a "debt collector"

under the FDCPA and that Defendant violated the FDCPA, and he seeks only those monetary damages available under the FDCPA and not declaratory or injunctive relief; and it is further

**RECOMMENDED** that in the event Plaintiff is granted leave to amend, he be instructed that the amended complaint will take the place of and effectively invalidate Plaintiff's second amended complaint, and that the amended complaint must comply with Rules 8(a) and 10(a)-(b) of the Federal Rules of Civil Procedure; and it is hereby

**ORDERED**, that the Clerk send Plaintiff a copy of this Order and Report-Recommendation, along with copies of the unpublished decisions cited herein, in accordance with the Second Circuit decision in *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam) at the address set forth for Plaintiffs in the docket.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**. *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

Dated: September 22, 2015
      Syracuse, New York

Thérèse Wiley Dancks
United States Magistrate Judge


Slip Copy, 2013 WL 5436969 (E.D.N.Y.)
**(Cite as: 2013 WL 5436969 (E.D.N.Y.))**

▷

Only the Westlaw citation is currently available.NOT
FOR PUBLICATION

United States District Court,
E.D. New York.
Joan Grant BOYD, et al., Plaintiffs,
v.
J.E. ROBERT CO., et al., Defendants.

No. 05–CV–2455 (KAM)(RER).
Sept. 27, 2013.

Mark Samuel Kaufman, Kaufman & Kahn, LLP,
Curtis V. Trinko, Offices of Curtis V. Trinko, Paul
Grobman, Paul Grobman, New York, NY, for Plain-
tiffs.

Jonathan David Elliot, Kristen Luise Zaehringer,
Zeldes, Needle & Cooper, Bridgeport, CT, Stephen
Edward Kitzinger, New York Law Department, New
York, NY, for Defendants.

*MEMORANDUM AND ORDER*
MATSUMOTO, District Judge.

*\*1 Plaintiffs Joan Grant Boyd, Randa Jones, Sybil
Taylor, and Tonya Warters (collectively, "Plaintiffs")
commenced this action on behalf of themselves and a
putative class of others similarly situated against De-
fendants J.E. Robert Co., Inc. and JER Revenue Ser-
vices, LLC (collectively, the "JER Defendants" or
"JER"), and NYCTL 1996–1 Trust, NYCTL 1997–1
Trust, NYCTL 1998–1 Trust, and NYCTL 1999–1
Trust (collectively, the "Trust Defendants"), alleging
violations of the Fair Debt Collection Practices Act,
15 U.S.C. § 1692, *et seq.* ("FDCPA") and New York
statutory and common law. On June 3, 2011, the JER
Defendants and Trust Defendants each filed a motion

for summary judgment, and the court referred those
motions to Magistrate Judge Ramon E. Reyes. (*See*
Order dated 2/13/12.)

On August 27, 2012, Judge Reyes issued a Report
and Recommendation, recommending that Defend-
ants' motions for summary judgment be granted in part
and denied in part. (ECF No. 241, Report and Rec-
ommendation dated 8/27/12 ("R & R") at 1.) The JER
Defendants, Trust Defendants, and Plaintiffs each
filed timely objections to the R & R and subsequently
submitted responses to each other's objections. (*See*
ECF No. 243, JER Defendants' Objections to R & R
("JER Obj."); ECF No. 244, Trust Defendants' Ob-
jections to R & R ("Trust Obj."); ECF No. 245,
Plaintiffs' Objections to R & R ("Pls.Obj."); ECF No.
247, Plaintiffs' Response to Defendants' Objections
("Pls. Resp. to Obj."); ECF No. 248, Trust Defendants'
Response to Pls. Obj. ("Trust Resp. to Pls. Obj.");
ECF No. 249, JER Defendants' Response to Pls. Obj.
("JER Resp. to Pls. Obj.").) By Order dated October 2,
2012, the court sustained Defendants' objections to
Judge Reyes' R & R, adopted in part and modified in
part the R & R, granted Defendants' respective mo-
tions for summary judgment, dismissed Plaintiffs'
FDCPA claims, and declined to exercise supplemental
jurisdiction over Plaintiffs' state law claims. (ECF No.
250, Order Adopting in Part and Modifying in Part R
& R ("10/2/12 Order").)

Presently before the court is Plaintiffs' ful-
ly-briefed motion for reconsideration pursuant to
Local Civil Rule 6.3.[FN1] (ECF No. 252, Plaintiffs'
Motion for Reconsideration dated 10/17/12 ("Pls.
Mot. for Recon."); ECF No. 257, JER Defendants'
Opposition to Pls. Mot. for Recon. ("JER Opp."); ECF
No. 258, Trust Defendants' Opposition to Pls. Mot. for
Recon. ("Trust Opp."); ECF No. 259, Plaintiffs' Reply
("Pls.Reply."); ECF No. 262, Plaintiffs' Letter
Providing Supplemental Authority ("Pls.Ltr.").) For

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2013 WL 5436969 (E.D.N.Y.)
**(Cite as: 2013 WL 5436969 (E.D.N.Y.))**

the reasons set forth below, Plaintiffs' motion for reconsideration is denied.

> FN1. On November 2, 2012, Plaintiffs timely filed a Notice of Appeal of the court's October 2, 2012 Order. (ECF No. 254, Notice of Appeal dated 11/2/12.) On February 27, 2013, the Second Circuit granted Plaintiffs' motion to hold the appeal in abeyance pending determination of the instant motion for reconsideration. (ECF No. 260, Order of Second Circuit granting Motion to Hold Appeal in Abeyance.)

### BACKGROUND

The court foregoes a recitation of the extensive procedural history and facts of this case, which have been set forth previously in Judge Reyes' R & R, this court's Order adopting in part and modifying in part Judge Reyes' R & R, and this court's prior Order on Defendants' motion to dismiss. (10/2/12 Order at 3–23; R & R at 2–7; ECF No. 191, Order Adopting Report and Recommendation dated 2/2/11 ("2/2/11 Order").)

### STANDARD OF REVIEW

**\*2** "Under Local Civil Rule 6.3, the standard for a motion for reconsideration is 'strict.' " *Norton v. Town of Islip,* No. 04–CV–3079, 2013 WL 84896, at \*3 (E.D.N.Y. Jan. 7, 2013) (citing *Schrader v. CSX Transp., Inc.,* 70 F.3d 255, 257 (2d Cir.1995)). "A motion for reconsideration may be granted only if a court overlooked (1) factual matters that were put before it on the underlying motion or (2) controlling legal authority." *Rollins v. N.Y. State Div. of Parole,* No. 03–CV–5952, 2007 WL 539158, at \*2 (E.D.N.Y. Feb. 16, 2007); *see also Virgin Atl. Airways v. Nat'l Mediation Bd.,* 956 F.2d 1245, 1255 (2d Cir.1992) ("The major grounds justifying reconsideration are an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." (internal quotation marks omitted)). "A motion for reconsideration is 'not in-tended as a vehicle for a party dissatisfied with the Court's ruling to advance new theories that the movant failed to advance in connection with the underlying motion.' " *WestLB AG v. BAC Fla. Bank,* 912 F.Supp.2d 86, 95 (S.D.N.Y.2012) (quoting *Parrish v. Sollecito,* 253 F.Supp.2d 713, 715 (S.D.N.Y.2003)). Indeed, "Local Rule 6.3 generally precludes a movant from 'advancing new facts, issues or arguments not previously presented to the court.' " *Id.* (quoting *United States v. Tillman,* No. 07–CR–1209, 2009 WL 1270301, at \*1 (S.D.N.Y. May 6, 2009)). Nor is a motion for reconsideration "a chance for a party to take a 'second bite at the apple.' " *Id.* (quoting *Rafter v. Liddle,* 288 F. App'x 768, 769 (2d Cir.2008)).

"It is within the sound discretion of the district court whether or not to grant a motion for reconsideration." *Markel Am. Ins. Co. v. Linhart,* No. 11–CV–5094, 2012 WL 5879107, at \*2 (E.D.N.Y. Nov. 16, 2012). In exercising this discretion, the court must be mindful that "a motion for reconsideration 'is not favored and is properly granted only upon a showing of exceptional circumstances.' " *Nakshin v. Holder,* 360 F. App'x 192, 193 (2d Cir.2010) (quoting *Marrero Pichardo v. Ashcroft,* 374 F.3d 46, 55 (2d Cir.2004)).

### DISCUSSION

Plaintiffs argue that the court committed clear error by granting Defendants' respective motions for summary judgment and therefore request reconsideration of the court's October 2, 2012 Order adopting in part and modifying in part Judge Reyes' R & R and dismissing Plaintiffs' FDCPA claims (the "October 2012 Order"). (Pls. Mot. for Recon. at 1–2.) Plaintiffs specifically maintain that the court erred by (1) finding that the New York City Tax Liens, which included charges for municipal water and sewer services, were not "debts" within the meaning of the FDCPA and (2) determining that Defendants' efforts to enforce and foreclose on the Tax Liens did not constitute debt collection activities actionable under the FDCPA. (*Id.* at 2–23.) Upon review of the relevant case law and

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2013 WL 5436969 (E.D.N.Y.)
**(Cite as: 2013 WL 5436969 (E.D.N.Y.))**

statutory authority, the court finds no clear error in its October 2012 Order and therefore denies Plaintiffs' motion for reconsideration, which fails to identify any controlling legal authority or facts overlooked by the court and instead merely attempts to relitigate and rehash arguments already considered and rejected by the court.

## I. The Court's October 2012 Order

**\*3** A brief review of this court's October 2012 Order is necessary before addressing the arguments raised in Plaintiffs' motion for reconsideration.

First, in its October 2012 Order, this court held that the Tax Liens on the Jones and Boyd Properties were not debts subject to the FDCPA because the mandatory tax, water, and sewer obligations levied on those properties did not arise from the type of consumer "transaction" contemplated by the FDCPA. (*See* 10/2/12 Order at 29–30 (citing *Beggs v. Rossi,* 145 F.3d 511 (2d Cir.1998) (per curiam)).) Specifically, the court reasoned that, similar to municipal taxes, the municipal water and sewer charges imposed upon Plaintiffs were levied upon Plaintiffs as an incident to property ownership and did not arise from a consensual transaction, where parties negotiate or contract for consumer services or goods, as contemplated by the FDCPA. (*Id.* at 28–34 (citing *Beggs,* 145 F.3d at 512; *Turner v. Cook,* 362 F.3d 1219, 1227 (9th Cir.2004); *Hawthorne v. Mac Adjustment, Inc.,* 140 F.3d 1367, 1371 (11th Cir.1998).) In support of this conclusion, the court explained that Plaintiffs "Jones and Boyd did not negotiate or enter into any contract or agreement with the City with respect to the utility charges" and that the "properties owned by Jones and Boyd were required by the New York City Administrative Code to be connected to City water and sewage mains and supplied with water at rates provided by the City." (*Id.* at 32 (citing N.Y.C. Admin. Code § 27–2024).)

Furthermore, the court determined that because "New York City's 'water and sewer infrastructure is funded by revenue it collects through water and sewer rates' from the City's property owners," the municipal water and sewer charges, like taxes, "are imposed upon New York City property owners to fund a public service: maintenance of the City's water and sewer infrastructure." (*Id.* at 34 (quoting N.Y.C. Environmental Protection, "About DEP Water Rates," http://home.nyc.gov/html/dep/html/water_rates/index.shtml (last visited 9/21/13)).) The court therefore concluded that the relationship between the City and Plaintiffs with respect to the water and sewer charges "resembles more the relationship between taxpayer and taxing authority than it does the consensual, transactional 'pro tanto exchange' between parties envisaged by the statutory definition of debt." (*Id.* at 34 (citing *Beggs,* 145 F.3d at 512).)

Moreover, the court noted that the municipal statutory scheme further supported the court's conclusion that the water and sewer charges imposed on Plaintiffs were more akin to taxes than consumer debts under the FDCPA. (*Id.* at 34–35.) In particular, the court explained that Section 1045-j(5) of the City's Public Authority Law—which provides that unpaid water and sewer charges shall constitute a lien upon the premises served, which lien "shall bear interest at the same rate as would unpaid taxes" and "may be foreclosed against the lot of building served in the same manner as a lien for such taxes," N.Y. Pub. Auth. Law § 1045-j(5)—strongly reinforces the court's finding that "water and sewer charges are to be treated in the same manner as taxes," under the FDCPA. (10/2/12 Order at 34–35.)

**\*4** Finally, the court rejected Plaintiffs' contention that the unpaid water charges on the Boyd Property were debts because such charges were metered based on water usage. (*See id.* at 35–36.) In rejecting Plaintiffs' argument, the court reasoned that "[t]hough metered usage arguably may be one factor in determining the nature of a lien, no court has held that it is the determinative factor." (*Id.*) In addition, the court ex-

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2013 WL 5436969 (E.D.N.Y.)
**(Cite as: 2013 WL 5436969 (E.D.N.Y.))**

plained that Plaintiffs proffered no evidence that "Boyd even requested water and sewer services from the City after ... a negotiation or business dealing or any form of exchange with the City." (*Id.* at 36.) Instead, the court noted, "Boyd was required to avail herself of City resources and pay concomitant charges for those resources as she used them, irrespective of the method by which the charges were determined by the City." (*Id.*) Accordingly, the court concluded that the water charges imposed on the Boyd Property, although metered, did not arise from a consensual transaction and therefore do not constitute debts under the FDCPA. (*Id.* at 36–37 (citing *Bass v. Stolper, Koritzinsky, Brewster & Neider, S.C.,* 111 F.3d 1322, 1326 (7th Cir.1997).)

Second, the court alternatively found that Defendants' efforts to enforce and foreclose on the Tax Liens constituted the enforcement of security interests rather than debt collection practices under the FDCPA. (*Id.* at 42–43.) In support of this determination, the court cited to authority from several other federal courts finding that the enforcement of a security interest through the foreclosure process is not debt collection under the FDCPA where, as here, no monetary judgment is sought against the debtor in enforcing a lien on property. (*See id.* at 42–46 (citing cases).) Finding this precedent persuasive, the court held that "because the judicial foreclosures against the Jones and Boyd Properties did not seek monetary judgments against individual debtors, those foreclosure actions ... are not debt collection activities under §§ 1692e and 1692f of the FDCPA." (*Id.* at 54.)

After dismissing Plaintiffs' FDCPA claims, the court declined to exercise supplemental jurisdiction over Plaintiffs' remaining state law claims and granted Defendants' respective motions for summary judgment. (*Id.* at 54–55.)

**II. The Tax Liens Are Not "Debts" Under the FDCPA.**

In their motion for reconsideration, Plaintiffs first urge the court to abandon its previous determination that the Tax Liens are not debts within the meaning of the FDCPA. (Pls. Mot. for Recon. at 2–14.) To that end, Plaintiffs contend that the court's previous Order misconstrued controlling authority regarding the meaning of the statutory terms "debt" and "transaction" and, at the very least, incorrectly held that the water charges on the Boyd Property, which were metered based on usage, were not debts under the FDCPA. (*Id.*) As discussed in further detail below, Plaintiffs' arguments are unavailing and fail to demonstrate any exceptional circumstances warranting reconsideration of this court's October 2012 Order. Accordingly, as this court previously found, the Tax Liens on the Jones and Boyd Properties are not debts within the meaning of the FDCPA.

**A. Controlling Second Circuit Authority**

**\*5** Plaintiffs claim that the court's October 2012 Order "fundamentally misconstrues" the Second Circuit's per curiam opinion in *Beggs v. Rossi,* 145 F.3d 511 (2d Cir.1998). (Pls. Mot. for Recon. at 3–9.) Plaintiffs maintain that, contrary to this court's reasoning, *Beggs* does not require a debt to arise from a *consensual* transaction, whereby parties negotiate or contract for consumer-related goods. (*Id.* at 5–6.) Plaintiffs argue that *Beggs* instead held that a debt is subject to the FDCPA if it " 'has arisen as a result of the rendition of a service or purchase of property or other item of value.' " (*Id.* at 4 (quoting *Beggs,* 145 F.3d at 512).) In Plaintiffs' view, this court ran afoul of the Second Circuit's clear guidance in *Beggs* by requiring that a debt arise from a *consensual* transaction.[FN2] (*Id.* at 5–8.)

> FN2. As further support for their reading of *Beggs* and their concomitant interpretation of the statutory term "transaction," Plaintiffs cite to *Karpova v. Snow,* 402 F.Supp.2d 459 (S.D.N.Y.2005), a non-FDCPA case in which the Southern District of New York discussed the meaning of the term "transaction" in the context of Iraqi Sanctions Regu-

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2013 WL 5436969 (E.D.N.Y.)
**(Cite as: 2013 WL 5436969 (E.D.N.Y.))**

lations. (Pls. Mot. for Recon. at 8–9). The Southern District's interpretation of the regulatory term "transaction" in *Karpova* provides scant guidance in the FDCPA context, and Plaintiffs provide no compelling reason why *Karpova*'s interpretation of "transaction" is persuasive in the consumer protection context. Plaintiffs' reliance on *Karpova* is therefore unavailing.

Plaintiffs' argument rests on a misguided view of the facts and the law, which "fundamentally misconstrues" and mischaracterizes the Second Circuit's holding in *Beggs.* In *Beggs,* the Second Circuit, relying upon the Third Circuit's decision in *Staub v. Harris,* held that " 'at a minimum,' the [FDCPA] contemplates that the debt has arisen as a result of the rendition of a service or purchase of property or other item of value.' " *145 F.3d at 512* (emphasis added) (quoting *Staub v. Harris,* 626 F.2d 275, 278 (3d Cir.1980)). By arguing that *Beggs* "simply requires that the 'debt' arise in connection with 'the rendition of [such] a service or purchase of property' to be subject to the FDCPA, (Pls. Mot. for Recon. at 5 (alteration in original) (quoting *Beggs,* 145 F.3d at 512)), Plaintiffs conveniently disregard the phrase "at a minimum" and consequently misinterpret *Beggs* as setting forth an exhaustive definition of the statutory term "transaction." Contrary to Plaintiffs' mistaken assertion, *Beggs* did not hold that the FDCPA applies so long as a debt arises out of a rendition of a service or a purchase of a consumer good. (Pls. Mot. for Recon. at 5–8.) To the contrary, *Beggs* held that the FDCPA does *not* apply if the purported "debt" does not arise out of a rendition of a service or a purchase of a consumer good. Stated differently, *Beggs* stands for the simple and unremarkable proposition that the FDCPA requires, at the very least, the rendition of a service or a purchase of a consumer good.[FN3]

> **FN3.** Notably, in *Staub,* the case which the Second Circuit found dispositive in *Beggs,* the Third Circuit stated that it "need not decide whether 'transaction' as used in the FDCPA always connotes the existence of an underlying contractual relationship." *Staub, 626 F.2d at 278.* Thus, notwithstanding Plaintiffs' erroneous suggestion to the contrary, *Staub,* and by extension *Beggs,* did not set forth an exhaustive definition of the statutory term "transaction" or preclude this court's holding that the FDCPA contemplates a consensual transaction.

Applying this principle, the Second Circuit in *Beggs* determined that an automobile tax was not a debt because such automobile taxes were levied "upon the ownership of the vehicle by the citizen," rather than "upon the purchase or registration of the vehicle *per se,*" and therefore did not involve a rendition of a service or purchase of a consumer good. *145 F.3d at 512.* In so holding, the *Beggs* court concluded that the "relationship between taxpayer and taxing authority does not encompass that type of *pro tanto* exchange which the statutory definition envisages." *Id. Beggs* is therefore fully consistent with this court's holding that the statutory definition of debt "contemplates a *consensual* transaction, where parties 'negotiate or contract' for consumer services or goods." (10/2/12 Order at 30–31 (citing *Turner, 362 F.3d at 1227*).) Consequently, Plaintiffs' incorrect claim that this court's October 2012 Order misconstrued controlling Second Circuit precedent is respectfully rejected.

**\*6** Beyond misinterpreting the Second Circuit's holding in *Beggs,* Plaintiffs also fail to address this court's conclusion that, under New York City's statutory and administrative regime, the municipal water and sewer charges are more analogous to taxes than consumer debts. (*See* 10/2/12 Order at 32–35.) Plaintiffs do not dispute that the Jones and Boyd properties were required by the New York City Administrative Code to be connected to municipal water and sewage mains and supply their properties with water at rates determined unilaterally by the City. N.Y.C. Admin. Code § 27–2024; *N.Y. Pub. Auth. Law §§ 1045–j(1),*

Slip Copy, 2013 WL 5436969 (E.D.N.Y.)
**(Cite as: 2013 WL 5436969 (E.D.N.Y.))**

(4). Nor do Plaintiffs dispute that New York City's water and sewer infrastructure "is funded by revenue it collects through water and sewer rates" from City property owners. "About DEP Water Rates," http://home.nyc.gov/html/dep/html/water_rates/index .shtml (last visited 9/23/13). Plaintiffs further concede that Section 1045–j(5) of the City's Public Authority Law provides that unpaid sewer and water obligations constitute a lien on the property that "shall bear interest at the same rate as would unpaid taxes" and "may be foreclosed against [the property] in the same manner as a lien for such taxes." N.Y. Pub. Auth. Law § 1045–j(5). Finally, in their opposition to summary judgment, Plaintiffs themselves argue that the unpaid water and sewer charges should be treated as taxes and insist that "state laws covering the collection of city taxes apply to the collection of the payments at issue." (ECF No. 230, Plaintiffs' Opposition to Defendants' Motions for Summary Judgment, at 37.)

These undisputed findings—all of which remain unaddressed in Plaintiffs' motion for reconsideration—elucidate two key points. First, these findings demonstrate that the unpaid water and sewer charges did not arise from a consensual transaction and therefore do not constitute debts under the FDCPA. (*See* 10/2/10 Order at 32–34.) Second, these findings amply support the court's ultimate conclusion that, under *Beggs,* the water and sewer charges are less analogous to consumer debts and more comparable to taxes and thus fall outside the protective ambit of the FDCPA. (*Id.* at 34–35.) As in *Beggs,* the relationship between the City and Plaintiffs in this case resembles more the "relationship between taxpayer and taxing authority" than it does the "type of *pro tanto* exchange which the statutory definition [of debt] envisages." 145 F.3d at 512. The court is therefore unconvinced that its October 2012 Order misconstrued or overlooked controlling precedent.

Plaintiffs next accuse this court of overlooking out-of-circuit decisions finding that condominium assessments and common charges constitute debts

within the meaning of the FDCPA. (Pls. Mot. for Recon. at 7 & n. 5 (citing cases).) These cases do not alter the court's conclusion that the Tax Liens in this case do not qualify as debts under the FDCPA. As a preliminary matter, these out-of-circuit cases are not controlling precedent and therefore do not warrant granting Plaintiffs' motion for reconsideration.[FN4] *Rollins,* 2007 WL 539158, at *2. In any event, the cases cited by Plaintiffs can be reconciled with this court's reasoning that the water and sewer charges levied mandatorily upon New York City property owners do not constitute debts under the FDCPA. Indeed, the cases cited by Plaintiffs involved voluntary transactions whereby condominium assessments were imposed upon property owners pursuant to consensual or negotiated agreements between the property owners and the condominium/homeowners associations of which the owners were members: put simply, the condominium assessments were a by-product of business dealings, and not mandatory charges imposed under municipal law. *See, e.g., Newman v. Boehm, Pearlstein & Bright, Ltd.,* 119 F.3d 477, 481 (7th Cir.1997) ("By paying the purchase price and accepting title to their home, the Riters became bound by the Declaration of Covenants, Conditions, and Restrictions of their homeowners association, which required the payment of regular and special assessments imposed by the association."). Such negotiated and consensual transactions are conspicuously absent in the instant case. As earlier noted, Jones and Boyd were required to utilize municipal water and sewer services and to pay for such services at rates determined by the City. And it is undisputed that the municipal statutory scheme treats unpaid water and sewer charges like unpaid taxes. N.Y. Pub. Auth. Law § 1045–j(5). Furthermore, Plaintiffs offer no compelling reason why this court should treat the municipal water and sewer charges like condominium assessments. As such, the court is not persuaded by Plaintiffs' reliance on out-of-circuit cases finding that condominium assessments, which are factually distinct from the mandatory statutory municipal sewer and water charges here, constitute debts under the

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2013 WL 5436969 (E.D.N.Y.)
**(Cite as: 2013 WL 5436969 (E.D.N.Y.))**

FDCPA.

> FN4. Moreover, at least some courts have held that condominium assessments and common charges do *not* constitute debts under the FDCPA. See *Mediterranean Villas Condo. Ass'n, Inc. v. Moors Master Maint., No. 11–23302, 2012 WL 882508, at *4 (S.D.Fla. Mar.14, 2012)* ("Maintenance fees assessments applied to all unit owners for costs of maintenance of common areas are generally not 'debts' within the meaning of the FCDPA."); *Azar v. Hayter, 874 F.Supp. 1314, 1318–19 (N.D.Fla.1995)*, *aff'd 66 F.3d 342 (11th Cir.1995)*; *Bryan v. Clayton, 698 So.2d 1236, 1237 (Fla.Dist.Ct.App.1997)*, *review denied by 707 So.2d 1123 (Fla.1998)*. The court finds that this split in authority weakens the persuasive force of Plaintiffs' argument that, like condominium assessments, the water and sewer charges here should be treated as debts.

**\*7** Equally as unpersuasive is Plaintiffs' claim that this court's October 2012 Order conflicts with the FTC Staff Commentary relied upon in *Beggs*. (Pls. Mot. for Recon. at 9–10.) Plaintiffs argue that the FTC Staff Commentary excludes unpaid taxes as debts but does not "include water or sewer charges among the obligations that are excluded from the 'debts' subject to the FDCPA." (Pls. Mot. for Recon. at 10.) Contrary to Plaintiffs' unsubstantiated assumption, the FTC Staff Commentary does not purport to provide an exhaustive list of all obligations excluded from the FDCPA. Indeed, the Introduction to the FTC Staff Commentary expressly clarifies that the "Commentary should be used in conjunction with the statute ... and is not intended as a substitute for the statutory text" and that the "Commentary should be not considered as a reflection of all court rulings under the FDCPA." Federal Trade Commission, "Statements of General Policy or Interpretation," Staff Commentary on the Fair Debt Collection Practices Act, 53 Fed.Reg.

50097, 50102 (Dec. 13, 1988). Consequently, the absence of "water and sewer charges" from the Staff Commentary's illustrative and non-exhaustive list of exclusions does not necessarily render such municipal utility charges "debts" within the meaning of the FDCPA. To the contrary, the FTC Staff Commentary reinforces this court's conclusion that the water and sewer charges, which resemble municipal taxes rather than consumer debts, fall outside the purview of the FDCPA. (*See* 10/2/12 Order at 32–35.)

**B. Boyd's Metered Water Usage**

Plaintiffs contend that, at the very least, this court committed clear error by finding that the metered water usage on the Boyd Property did not constitute a debt under the FDCPA. (Pls. Mot. for Recon. at 10–12.) Plaintiffs specifically take issue with this court's finding that " 'no court has held that [metered usage] is the determinative factor' " in resolving whether the water and sewer charges are debts under the FDCPA. (*Id.* at 11 (quoting 10/2/12 Order at 36).) According to Plaintiffs, the Third Circuit in *Piper* expressly held that a payment obligation arising from metered water usage is a consensual transaction subject to the FDCPA. (*Id.* at 11–12 (quoting *Piper v. Portnoff Law Assocs., 396 F.3d 227, 233 n. 8 (3d Cir.2005).)*

In *Piper*, the Third Circuit provided the following analysis with respect to the unpaid water service fees in that case:

> It is true, as [defendant] stresses, that a property owner in Pennsylvania may incur an obligation to pay a water service fee even though he has not connected his property to the municipal water system, but that is not the situation before us. Nor does this fact render erroneous the *Pollice [v. Nat'l Tax Funding, L.P., 225 F.3d 379 (3d Cir.2000)*, Court's characterization of normal water/sewer fees in Pennsylvania as arising from a "consensual ... transaction." It is apparent from the Pipers' account with the City that their service was metered in the

normal fashion and that the amount of their obligation to pay was based on the amount of water they chose to use. The consensual nature of the transaction distinguishes the situation before us from tax assessments which *Pollice* held to not be debts within the meaning of the FDCPA.

**\*8** 396 F.3d at 233 n. 8 (internal citation omitted). Seizing upon this language in *Piper*, Plaintiffs argue that the water charges on the Boyd Property likewise arose from a consensual transaction because they were metered according to usage. (Pls. Mot. for Recon. at 11–12.) FN5

> FN5. The court has also received and considered Plaintiffs' unauthorized letter, dated September 25, 2013, in which Plaintiffs bring to the court's attention the recent decision, *Reilly v. Northeast Revenue Servs.,* No. 12–CV–02312, 2013 U.S. Dist. LEXIS 108554, 2013 WL 3974181 (M.D.Pa. Aug. 1, 2013).

In pursuing this argument, however, Plaintiffs ignore the critical distinction between the municipal scheme in *Piper* and the municipal water and sewer regime in the City of New York. Unlike in *Piper,* Boyd did not, and could not, "voluntarily elect[ ] to avail [her]self of municipal water/sewer services," *Piper,* 396 F.3d at 233 n. 8; rather, Boyd was required to do so by New York City municipal law. As this court previously noted in its October 2012 Order, Plaintiffs fail to demonstrate that the administrative regime for water and sewer services in the City of Pittsburgh is comparable to the administrative regime in the City of New York. In fact, Plaintiffs concede that, unlike in New York City, where the municipal water board serves as the sole water and sewage provider, private companies serve the water and sewage needs of property owners in the City of Pittsburgh and serve as an alternative to municipal public utilities. (10/2/12 Order at 40 & n .16 (citing Pennsylvania American Water Company,

http://www.amwater.com/paaw/about-us/page9704.html (last visited 9/23/13)).) This fact lends credence to the court's determination that water users in *Piper* exercised a level of consent not present in the instant case. Plaintiffs therefore fail to establish any similarity between the "normal water/sewer fees in Pennsylvania" in *Piper* and the mandatory water and sewer charges imposed by New York City in this case.FN6

> FN6. Significantly, Plaintiffs do not contest this court's finding that the bundled Tax Liens are unique and distinguishable from the municipal liens in *Pollice* and *Piper,* which, unlike the Tax Liens, were not composed of mixed obligations bundled into one instrument. (10/2/12 Order at 40–41.) This distinction likewise renders *Pollice* and *Piper* inapposite.

Finally, to the extent that *Piper* holds that metered usage alone gives rise to a consensual transaction under the FDCPA, this court declines to adopt such reasoning where, as here, property owners have no choice in determining whether or not to use municipal water services. Irrespective of whether Boyd's water charges were metered based on usage, Boyd was required by law to connect her property to municipal water mains and pay for such water at rates determined by the City or face foreclosure of a lien on their properties for unpaid water and sewer charges. Given these facts, it simply cannot be said that the water charges on the Boyd Property—metered or not—arose from a consensual transaction.

Because Plaintiffs have failed to identify any facts or controlling precedent overlooked by the court in its October 2012 Order, reconsideration is not warranted with respect to the court's finding that the Tax Liens do not constitute debts within the meaning of the FDCPA.

**III. The FDCPA Does Not Apply to the Enforce-**

Slip Copy, 2013 WL 5436969 (E.D.N.Y.)
(Cite as: 2013 WL 5436969 (E.D.N.Y.))

ment of Security Interests Against Property.

Plaintiffs additionally challenge this court's alternative holding that Defendants' efforts to foreclose on the Tax Liens constituted the enforcement of security interests rather than debt collection practices subject to the FDCPA. (Pls. Mot. for Recon. at 14–19.) Plaintiffs maintain that unauthorized amounts collected during foreclosure are subject to the FDCPA and argue that this court mistakenly held that "defendant's *actual collection* of the allegedly improper amounts did not constitute the *'collection or attempt to collect a debt'* subject to § 1692(f)(1) because it occurred during a foreclosure." (Pls. Mot. for Recon. at 15.) In Plaintiffs' view, the court's decision is at odds with the weight of decisional authority as well as the position adopted by the Consumer Financial Protection Bureau ("CFPB") in a recent amicus brief. (*Id.* (citing cases FN7).)

> FN7. Plaintiffs cite to decisions from numerous federal Courts of Appeals in support of their argument. *See, e.g., Glazer v. Chase Home Fin. LLC,* 704 F.3d 453, 459–64 (6th Cir.2013); *Wallace v. Washington Mut. Bank, F.A.,* 683 F.3d 323, 328 (6th Cir.2012); *Birster v. Am. Home Mortg. Serv., Inc.,* 481 F. App'x 579 (11th Cir.2012); *Reese v. Ellis, Painter, Ratterree & Adams, LLP,* 678 F.3d 1211, 1217–18 (11th Cir.2012); *Wilson v. Draper & Goldberg,* 443 F.3d 373, 376 (4th Cir.2006); *Kaltenbach v. Richards,* 464 F.3d 524, 527 (5th Cir.2006); *Piper,* 396 F.3d at 234–35.

**\*9** Plaintiffs' argument is flawed in several respects. First and foremost, Plaintiffs misrepresent the scope of this court's holding in the October 2012 Order. Contrary to Plaintiffs' broad mischaracterization, this court did not find that Defendants' actions fell outside of the FDCPA "because [the challenged collection activities] *occurred during* foreclosure." (*Id.*) (emphasis added). Instead, the court held that the foreclosure actions as to the Tax Liens did not seek

monetary judgments against Plaintiffs and were therefore not debt collection activities for purposes of the FDCPA, but, rather, constituted the enforcement of Defendants' security interests in property. (10/2/12 Order at 42, 54.) Central to this court's holding was the undisputed fact that the foreclosure complaints did not request deficiency judgments against Jones or Boyd and instead proceeded solely against the Jones and Boyd Properties, both of which were subject to Tax Liens. (*Id* . at 47–48.) The court rejects Plaintiffs' attempt to assign error in this court's October 2012 Order by misconstruing the court's holding.

In any case, to the extent that the appellate court cases and the CFPB amicus brief cited by Plaintiffs support the proposition that the enforcement of security interests through lien foreclosure constitutes debt collection, FN8 the court declines to follow the misguided reasoning in these non-controlling cases. As this court previously found, the enforcement of a security interest through foreclosure proceedings that do not seek monetary judgments against debtors is not debt collection for purposes of the FDCPA. In so holding, the court respectfully parts ways with the federal appellate courts that have held to the contrary and instead joins the many federal district courts, including at least one in the Second Circuit, that have determined that foreclosure activities do not constitute debt collection under the FDCPA. *See, e.g., Proa v. Wells Fargo Bank, N.A.,* No. 13–CV–759, 2013 WL 4508364, at \*5 n. 2 (S.D.Cal. Aug.22, 2013) ("[T]he acts Defendants took to enforce a security interest do not qualify as debt collection within the scope of § 1692e."); *DeMoss v. Peterson, Fram & Bergman,* No. 12–CV–2197, 2013 WL 1881058, at \*2 (D.Minn. May 6, 2013) ("[T]his court has previously held that foreclosure activities do not constitute debt collection under the FDCPA."); *Lara v. Aurora Loan Servs. LLC,* No. 12–CV–904, 2013 WL 1628955, at \*7 (S.D.Cal. Apr.16, 2013) ("[N]umerous district courts, including several in the Ninth Circuit, have also held that the activity of foreclosing on [a] property pursuant to a deed of trust is not collection of a debt within the

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2013 WL 5436969 (E.D.N.Y.)
**(Cite as: 2013 WL 5436969 (E.D.N.Y.))**

meaning of the FDCPA." (internal quotation marks omitted) (alterations in original)); *Derisme v. Hunt Leibert Jacobson P.C.,* 880 F.Supp.2d 311, 325 (D.Conn.2012) ("[I]t appears that a majority of courts who have addressed this question have also concluded that foreclosing on a mortgage does not qualify as debt collection activity for purposes of the FDCPA."); *Kangas v. Kieffer,* No. 12–CV–8, 2012 WL 1424388, at *5 (D.N.D. Apr. 24, 2012) ("[T]he Court finds that Kieffer and Gray & Associates are not subject to the Fair Debt Collection Practices Act in this case because their foreclosure activities in this particular case do not constitute debt collection."), *aff'd,* 495 F. App'x 749 (8th Cir.2012); *Zhang v. Countrywide Home Loans, Inc.,* No. 11–CV–03475, 2012 WL 1245682, at *11 (N.D.Cal. Apr. 13, 2012) ("The question of whether a foreclosure constitutes debt collection under the FDCPA has not been decided by the Ninth Circuit, but district courts throughout the Ninth Circuit have concluded that it does not." (internal quotation marks omitted)); *Meyer v. Citimortgage, Inc.,* No. 11–CV–13432, 2012 WL 511995, at *7 (E.D.Mich. Feb. 16, 2012) ("To the extent plaintiffs' various, unspecified FDCPA claims concern the enforcement of the mortgage, these claims fail because the FDCPA are not applicable to the enforcement of a security interest, because the FDCPA does not consider foreclosure to be debt collection."); *Bray v. Bank of Am.,* No. 09–CV–75, 2011 WL 30307, at *7 (D.N.D. Jan. 5, 2011) ("In Gray, the district court concluded foreclosure activities are not debt collection, as contemplated by the Fair Debt Collection Practices Act."), *appeal dismissed,* 435 F. App'x 571 (8th Cir.2011) and *aff'd,* 497 F. App'x 685 (8th Cir.2013); *Speleos v. BAC Home Loans Serv., L.P.,* 824 F.Supp.2d 226, 232 (D.Mass.2011) ("The statute itself, however, distinguishes debt collection from security interest enforcement in its definition of a 'debt collector.' "); *Geist v. OneWest Bank,* No. 10–C–1879, 2010 WL 4117504, at *3 (N.D.Cal. Oct. 19, 2010) ("Although the Ninth Circuit has not yet addressed whether a foreclosure action constitutes 'debt collection' under the FDCPA, district courts throughout the Ninth Cir-

cuit have concluded that it does not." (collecting cases)); *Odinma v. Aurora Loan Servs.,* No. 09–C–4674, 2010 WL 2232169, at *11 (N.D.Cal. June 3, 2010) ("[F]oreclosure is not debt collection under the federal Fair Debt Collection Practices Act."); *Aniel v. T.D. Serv. Co.,* No. 10–C–3185, 2010 WL 3154087, at *1 (N.D.Cal. Aug.9, 2010) ("Plaintiffs' allegations relating to the FDCPA claim relate to foreclosure proceedings and courts throughout this circuit have concluded that foreclosure does not constitute 'debt collection' under the FDCPA."); *Jozinovich v. JP Morgan Chase Bank, N.A.,* No. 09–C–3326, 2010 WL 234895, at * 6 (N.D.Cal. Jan.14, 2010) ("[T]he activity of foreclosing on [a] property pursuant to a deed of trust is not the collection of a debt within the meaning of the FDCPA." (alterations in original) (internal quotation marks omitted)); *Siegel v. Deutsche Bank Nat'l. Trust Co.,* No. 08–CV–517, 2009 WL 3254491, at *4 (D.Neb. Oct. 8, 2009) ("A mortgage foreclosure is not a debt collection activity."), *aff'd,* 409 F. App'x 975 (8th Cir.2011); *Landauu v. Washington Mut. Bank,* No. 09–C–916, 2009 WL 3047238, at *3 (N.D.Cal. Sept. 18, 2009) ("A claim cannot arise under FDCPA based upon the lender enforcing its security interest under the subject deed of a trust because foreclosing on a mortgage does not constitute an attempt to collect a debt for purposes of the FDCPA."); *Salazar v. Tr. Corps.,* No. 08–CV–2142, 2009 WL 690185, at *6 (S.D.Cal. Mar. 12, 2009) ("The Court accordingly finds that the foreclosure on plaintiff's home is not the collection of a debt within the meaning of the FDCPA."); *Gray v. Four Oak Court Ass'n, Inc.,* 580 F.Supp.2d 883, 888 (D.Minn.2008) ("[T]he enforcement of a security interest, including a lien foreclosure, does not constitute the 'collection of any debt.' "); *Rosado v. Taylor,* 324 F.Supp.2d 917, 924 (N.D.Ind.2004) ( "Security enforcement activities fall outside the scope of the FDCPA because they aren't debt collection practices."); *Hulse v. Ocwen Fed. Bank, FSB,* 195 F.Supp.2d 1188, 1204 (D.Or.2002) ("Foreclosing on a trust deed is distinct from the collection of the obligation to pay money.... Payment of funds is not the object of the

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2013 WL 5436969 (E.D.N.Y.)
**(Cite as: 2013 WL 5436969 (E.D.N.Y.))**

foreclosure action. Rather, the lender is foreclosing its interest in the property."); *cf. Glazer v. Chase Home Fin., LLC,* 704 F.3d 453, 460 (6th Cir.2013) ("The view adopted by a majority of district courts, and the one followed below, is that mortgage foreclosure is not debt collection. This view follows from the premise that the enforcement of a security interest, which is precisely what mortgage foreclosure is, is not debt collection." (citing but disagreeing with district court cases)).

> FN8. JER Defendants persuasively argue that many of appellate cases cited by Plaintiffs do not fully support the proposition that the foreclosures on property liens constitute debt collection activities particularly where, as here, no deficiency judgments have been sought; to that end, JER Defendants provide several reasons why these Circuit Court cases are distinguishable on their facts and, in any event, not controlling. (JER Opp. at 7–8.) Although the court finds merit in JER Defendants' argument, the court need not distinguish these cases because, as set forth *infra,* the reasoning adopted by these cases is tenuous.

**\*10** In this court's view, the prevailing approach among federal district courts is correct and based upon a proper reading of the FDCPA's statutory language. The district court in *Gray v. Four Oak Court Association* provides the following analysis to support the conclusion that the enforcement of security interests is distinct from debt collection under the FDCPA:

> The FDCPA does not define "the collection of any debt." However, the statute's definition of a "debt collector" clearly reflects Congress's intent to distinguish between "the collection of any debts" and "the enforcement of security interests." 15 U.S.C. § 1692a(6). The first sentence of that definition defines a debt collector as "any person who uses any instrumentality of interstate commerce or the mails

> in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." *Id.* § 1692a(6). The third sentence of § 1692a(6) provides that for purposes of § 1692f(6), a debt collector is also "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the enforcement of security interests." If a party satisfies the first sentence, it is a debt collector for purposes of the entire FDCPA. If a party satisfies only the third sentence, its debt collector status is limited to § 1692f(6). However, if the enforcement of a security interest was synonymous with debt collection, the third sentence would be surplusage because any business with a principal purpose of enforcing security interests would also have the principal purpose of collecting debts. Therefore, to avoid this result, the court determines that the enforcement of a security interest, including a lien foreclosure, does not constitute the "collection of any debt."

580 F.Supp.2d at 887–88 (footnote and citation omitted); *see also Armacost v. HSBC Bank USA,* No. 10–CV–274, 2011 WL 825151, at \*5–6 (D.Idaho Feb. 9, 2011) (adopting statutory interpretation of *Gray* ), *adopted by* 2011 WL 809166 (D.Idaho Mar.2, 2011); *Jara v. Aurora Loan Servs., LLC, et al.,* No. 11–C–419, 2011 WL 6217308, at \*5 (N.D.Cal. Dec.14, 2011) (finding statutory interpretation of *Armacost* persuasive).

The court is persuaded by the statutory interpretation set forth in *Gray* and fully adopts its reasoning. As the *Gray* court aptly observed, construing the enforcement of security interests as debt collection under the FDCPA renders superfluous some of the statutory text. 580 F.Supp.2d at 887–88. "It is well-settled that courts should avoid statutory interpretations that render provisions superfluous: 'It is our duty to give effect, if possible, to every clause and word of a statute.' " *State Street Bank & Trust Co. v. Salovaara,* 326

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2013 WL 5436969 (E.D.N.Y.)
**(Cite as: 2013 WL 5436969 (E.D.N.Y.))**

F.3d 130, 139 (2d Cir.2003) (quoting *Duncan v. Walker,* 533 U.S. 167, 174, 121 S.Ct. 2120, 150 L.Ed.2d 251 (2001)); *see also United States v. Aleynikov,* 676 F.3d 71, 81 (2d Cir.2012) (rejecting interpretation as "inconsistent with one of the most basic interpretative canons, that a statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant" (internal quotation marks omitted)). The canon against surplusage therefore militates strongly in favor of *Gray* 's statutory interpretation.

**\*11** The Sixth Circuit recently rejected the interpretive approach adopted by *Gray. See Glazer,* 704 F.3d at 463–64. Specifically, the Sixth Circuit explained that the FDCPA does not "except from debt collection the enforcement of security interests" but rather "operates to *include* certain persons under the Act (though for a limited purpose); it does not *exclude* from the Act's coverage a method commonly used to collect a debt." *Id.* (citing *Piper,* 396 F.3d at 236). In reaching this determination, the *Glazer* court asserted that "[o]ther than repossession agencies and their agencies, we can think of no others whose only role in the collection process is the enforcement of security interests. A lawyer principally engaged in mortgage foreclosure does not meet this criteria, for he must communicate with the debtor regarding the debt during the foreclosure proceedings." *Id.* at 464. Repossession agencies, the Sixth Circuit reasoned, do not have to communicate with debtors because they "typically 'enforce' a security interest ... when the debtor is not present." *Id.*

*Glazer* 's reasoning is unconvincing and has been rejected elsewhere. *See Natividad v. Wells Fargo Bank, N.A.,* No. 12–CV–3646, 2013 WL 2299601, at *6–7 (N.D.Cal. May 24, 2013) (rejecting the reasoning and analysis of *Glazer* ). For example, the district court in *Natividad* has recently identified several of *Glazer* 's flaws:

Nothing in the [FDCPA] supports *Glazer* 's con-

clusion that an entity cannot be considered an enforcer of security interests if there are communications between it and the debtor. An entity, such as a trustee, is enforcing a security interest when it pursues nonjudicial foreclosure as much as a repossession agency is enforcing a security interest when it takes possession of a vehicle. That entities pursuing nonjudicial foreclosure must provide statutorily mandated communications to debtors—such as a notice of default—does not automatically deprive them of their role as enforcers of security interests. In addition, *Glazer* appears to assume that the third sentence only includes repossessors, as opposed to also excluding repossessors from the other provisions of the Act. However, under the broad definition of "debt collection" articulated by the [*Glazer* ] court, the activities of repossessors, as the activities of persons pursuing mortgage foreclosure, could fall within that definition. After all, [according to the *Glazer* court's own reasoning,] the ultimate goal of repossessing a vehicle is to pay down an outstanding debt—just as the ultimate goal of foreclosing on a mortgage is to satisfy the loan amount. Thus, for the purpose of determining what actions comprise collecting debt, and therefore who qualifies as a "debt collector" under the Act, the actions of repossessors are not distinguishable from the actions of persons pursuing mortgage foreclosure.

*Id.* at *7. The FDCPA by its own terms contemplates a distinction between the "collection of any debts" and "the enforcement of security interests." 15 U.S.C. § 1692a(6). The Glazer court overlooks this basic statutory distinction and engages in statutory interpretation that this court declines to follow.[FN9] *Speleos,* 824 F.Supp.2d at 232 ("The statute itself, however, distinguishes debt collection from security interest enforcement in its definition of a 'debt collector.' ").

FN9. The *Glazer* court also relies upon 15 U.S.C. § 1692i(a)(1) to support its holding

that the enforcement of security interests constitutes debt collection under the FDCPA. 704 F.3d at 462. Section 1692i(a)(1) is a venue provision that requires a debt collector who brings a legal action against a consumer "to enforce an interest in real property securing the consumer's obligation" to file the action in the judicial district where the property is located. 15 U.S.C. § 1692i(a)(1). This provision, the *Glazer* court argues, suggests that "filing *any* type of mortgage foreclosure action, even one not seeking a money judgment on the unpaid debt, is debt collection under the Act." *Id.* This is not so. Although § 1692i is a venue provision that, by its terms, applies to only "debt collectors," the *Glazer* court erroneously assumes that these debt collectors are debt collectors *because* of their mortgage foreclosure activities, rather than because of other activities that qualify as debt collection under the FDCPA. There is nothing in the text of § 1692i to support the *Glazer* court's assumption. *See Natividad*, 2013 WL 2299601, at *8 ("[T]he [*Glazer*] court's conclusion fail[s] to recognize that the entire FDCPA can apply to a party whose principal business is enforcing security interests but who nevertheless fits § 1692a (6)'s general definition of a debt collector.").

**\*12** The court therefore concludes—as it did in its October 2012 Order—that where, as here, no monetary judgment is sought against a debtor, the enforcement of a security interest through lien foreclosure does not constitute debt collection for purposes of the FDCPA.[FN10]

FN10. Plaintiffs conclude their motion for reconsideration by arguing that the sole inquiry under § 1692f(1) is whether defendants collected unauthorized amounts. (Pls. Mot. for Recon. at 20–22.) Plaintiffs thus argue that "the Court's finding that 'defendant's judicial foreclosures did not attempt to collect money from the debtor' is not only irrelevant for purposes of § 1692f(1), but logically inconsistent as well." (*Id.* at 23.) This argument misses the mark. To be liable under § 1692f(1), a debt collector must "collect or attempt to collect [a] debt." 15 U.S.C. § 1692f. Thus, this court's finding that Defendants' judicial foreclosures did not attempt to collect monetary judgments from Plaintiffs is of central relevance to determining whether Defendants' actions in enforcing the Tax Liens against the Jones and Boyd Properties constitute debt collection activities for purposes of § 1692f(1). In any event, Plaintiffs have pointed to no controlling legal authority or facts that this court overlooked and therefore are not entitled to reconsideration on this, or any other, issue.

\* \* \*

At bottom, Plaintiffs' motion for reconsideration is a thinly veiled attempt to obtain a second bite at the apple by relitigating issues already considered by the court. Even if Plaintiffs' motion raised some meritorious arguments, which it does not, Plaintiffs fail to identify any clear error or controlling precedent or facts overlooked in this court's October 2012 Order. Having failed to do so, Plaintiffs are not entitled to reconsideration.

### CONCLUSION

For the reasons set forth above, Plaintiffs' motion for reconsideration is denied. The parties shall inform the Second Circuit of the disposition of this motion, transmit a copy of this Memorandum and Order to the Second Circuit, and file an affidavit in this docket confirming such transmittal no later than October 1, 2013.

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2013 WL 5436969 (E.D.N.Y.)
**(Cite as: 2013 WL 5436969 (E.D.N.Y.))**

**SO ORDERED.**

E.D.N.Y.,2013.
Boyd v. J.E. Robert Co.
Slip Copy, 2013 WL 5436969 (E.D.N.Y.)

END OF DOCUMENT

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.


Not Reported in F.Supp.2d, 2007 WL 2262893 (E.D.N.Y.)
**(Cite as: 2007 WL 2262893 (E.D.N.Y.))**

▷

Only the Westlaw citation is currently available.

United States District Court,
E.D. New York.
Thomas P. MILTON, Plaintiff,
v.
ROSICKI, ROSICKI & ASSOCIATES, P.C., NCB
Savings Bank, FSB, Greenstein Starr Gerstein &
Rinaldi, LLP, and Andrea L. Roschelle, Defendants.

No. 02 CV 3052(NG).
Aug. 3, 2007.

Thomas P. Milton, Shelter Island, NY, pro se.

Owen M. Robinson, Rosicki, Rosicki & Associates,
P.C., Plainview, NY, Susan A. West, Rosicki, Rosicki
& Associates, P.C., Islip, NY, Joseph E. Macy,
Berkman, Henoch, Peterson & Peddy, P.C., Garden
City, NY, Ariel Michael Furman, Jeannie Valentine,
Kaufman, Borgeest & Ryan LLP, Joan M. Gilbride,
Kaufman, Borgeest & Ryan, New York, NY, for Defendants.

#### OPINION AND ORDER

GERSHON, United States District Judge.

**\*1** *Pro se* plaintiff Thomas Milton, trained as an
attorney, claims that defendants Greenstein Starr
Gerstein & Rinaldi LLP ("Greenstein Starr"), Andrea
L. Roschelle ("Attorney Roschelle"), and Rosicki,
Rosicki & Associates, P.C. ("Rosicki") violated certain provisions of the Fair Debt Collection Practices
Act ("FDCPA") when they created and delivered
notices regarding debts that Mr. Milton owed to his
condominium association. Defendants Greenstein
Starr and Attorney Roschelle move for summary
judgment, arguing that they did not engage in debt

collection activity, that they are not debt collectors,
and that the FDCPA therefore does not apply to their
actions. Defendant Rosicki moves to dismiss the
complaint for lack of jurisdiction pursuant to Rule
12(b)(1) of the Federal Rules of Civil Procedure.
Specifically, Rosicki seeks dismissal of Mr. Milton's
claims on the ground that the matter is moot because
Rosicki made Mr. Milton an Offer of Judgment under
Rule 68 of the Federal Rules of Civil Procedure and
the Offer of Judgment exceeds the maximum relief
obtainable by Mr. Milton. For the reasons set forth
below, Rosicki's motion to dismiss is granted, and
summary judgment is granted as to Greenstein Starr
and Attorney Roschelle.

**I. BACKGROUND**

In 1994, Mr. Milton borrowed $68,000.00 from
NCB to purchase shares in a cooperative apartment
located at 305 East 72nd Street in New York City.
Sometime in early 1999, Mr. Milton's apartment became infested with mice and other vermin. In October
2000, Mr. Milton began withholding his maintenance
payments in order to force the cooperative to remedy
the situation in his apartment. In May 2001, Mr. Milton received a bill in the amount of $501.40 from the
cooperative for arrears that also included legal work
performed by Greenstein Starr, the cooperative's
general counsel, and Attorney Roschelle, an associate
who worked at Greenstein Starr. On May 17, 2001,
and November 5, 2001, Mr. Milton received Notices
of Default and Intentions to Terminate the Proprietary
Lease which were signed by the cooperative's president, but mailed by Greenstein Starr. Mr. Milton was
able to determine that Greenstein Starr mailed the
Notices because Greenstein Starr's return address
appeared on the envelopes and certified mail receipts
and because Attorney Roschelle's initials appeared in
the path of the documents, located in the lower left
hand corner. On October 4, 2001, Milton received a
notice from Rosicki, NCB's lawyers, demanding

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2007 WL 2262893 (E.D.N.Y.)
**(Cite as: 2007 WL 2262893 (E.D.N.Y.))**

payment and threatening to foreclose in the event of non-payment. Following this initial notice, many communications between the parties ensued. Based on these notices, Mr. Milton brought claims against Rosicki, Greenstein Starr, and Attorney Roschelle alleging that they violated various provisions of the FDCPA. Three claims remain pending against Greenstein Starr and Attorney Roschelle.[FN1] Three claims also remain pending against Rosicki: (1) violation of 15 U.S.C. § 1692(g) for failing to properly respond to plaintiff's debt validation request, (2) violation of 15 U.S.C. § 1692(g) for mailing two Notices of Sale prior to responding to plaintiff's validation request, and (3) violation of 15 U.S.C. § 1692(e)(11) for mailing a letter that did not indicate it came from a debt collector.[FN2] For these alleged violations, Mr. Milton, in his second amended complaint, seeks additional damages [FN3], attorney's fees, and actual damages in excess of $10 million. Mr. Milton also seeks an injunction prohibiting Rosicki from future violations of the FDCPA. To settle the alleged violations, Rosicki made Milton a Rule 68 Offer of Judgment of $5000.00 on September 15, 2005.

> **FN1.** Mr. Milton alleged a total of fifteen claims, six of which were directed against defendants Greenstein Starr and Attorney Roschelle. Three of these six claims stemmed from alleged breaches of the FDCPA, while the remaining three related to state law claims that were dismissed on December 16, 2004. *See* Order of Dec. 16, 2004, docket no. 57.

> **FN2.** By an opinion dated September 30, 2004, this court dismissed claims that Rosicki (1) violated 15 U.S.C. § 1692(e)(5) by writing a false and misleading statement regarding the intention to initiate legal proceedings while never actually having an intention to do so, (2) violated 15 U.S.C. § 1692(f)(1) by using unfair and unconscionable means to collect a debt, (3) violated 15

U.S.C. § 1692(f)(1) by failing to join plaintiff in his fight against the cooperative, and (4) violated 15 U.S.C. § 1692(f) by conspiring, and aiding and abetting with the other defendants.

> **FN3.** The FDCPA statute refers to statutory damages as "additional damages."

**\*2** On January 30, 2006, Magistrate Judge Lois Bloom set a briefing schedule for the defendants' motions and directed Mr. Milton to file his opposition papers, if any, by June 23, 2006. On the same date, Judge Bloom also granted Mr. Milton's request to extend the discovery deadline from December 30, 2005 to March 31, 2006. On March 22, 2006, the discovery deadline was extended until April 21, 2006. Defendants Greenstein Starr and Attorney Roschelle served their summary judgment motion on Mr. Milton on May 12, 2006, and defendant Rosicki served its motion to dismiss on May 17, 2006. By letter dated June 23, 2006, Mr. Milton objected to Judge Bloom's January 30, 2006 order and requested that the court reopen discovery. On June 30, 2006, Mr. Milton's request to reopen discovery and compel certain responses from defendants was denied, but Mr. Milton was granted additional time, until July 31, 2006, to respond to defendants' motions. Judge Bloom noted that, "[w]hile the Court sympathizes that plaintiff may have been in ill health, this does not excuse plaintiff's failure to act until two months after the close of discovery, and coincidentally, until the date his opposition to defendants' motions for summary judgment was due." By letter dated July 31, 2006 and received on October 20, 2006, Mr. Milton objected to the defendants' motions on the sole ground that he had been denied fundamental due process because of the defendants' alleged failure to comply with certain discovery requests. Accordingly, the defendants' motions shall be considered unopposed on all grounds except for those grounds that Mr. Milton raised in his letter dated July 31, 2006.

Not Reported in F.Supp.2d, 2007 WL 2262893 (E.D.N.Y.)
**(Cite as: 2007 WL 2262893 (E.D.N.Y.))**

## II. ROSICKI'S MOTION TO DISMISS

### A. Subject Matter Jurisdiction

A federal court lacks subject matter jurisdiction over an action unless the action presents an actual case or controversy. *S. Jackson & Son, Inc. v. Coffee Sugar & Cocoa Exch., Inc.,* 24 F.3d 427, 431 (2d Cir.1994). When it appears that a court lacks subject matter jurisdiction, the court must dismiss the action. *See* Fed.R.Civ.P. 12(h)(3). Thus, "when parties lack a legally cognizable interest in the outcome [of a case]," a claim becomes moot for lack of subject matter jurisdiction. *Powell v. McCormack,* 395 U.S. 486, 496, 89 S.Ct. 1944, 23 L.Ed.2d 491 (1969). A legally cognizable interest requires that a plaintiff have a "personal stake" in the litigation. *Fox v. Bd. of Trs. of the State Univ. of N.Y.,* 42 F.3d 135, 140 (2d Cir.1994).

Where a defendant offers judgment in an FDCPA case for the maximum relief obtainable by plaintiff, an action becomes moot and subject to dismissal because there exists no controversy pending court adjudication. *Ambalu v. Rosenblatt,* 194 F.R.D. 451, 451 (E.D.N.Y.2000). However, if the Offer of Judgment does not cover all potential damages, the offer is not sufficient and controversy remains. *Wilner v. OSI Collection Servs., Inc.,* 201 F.R.D. 321, 323 (S.D.N.Y.2001). In determining the value of the relief, defendant bears the burden of proving that the Rule 68 offer is more favorable than an award plaintiff could receive by judgment. *Reiter v. MTA N.Y. City Transit Auth.,* 457 F.3d 224, 231 (2d Cir.2005).

### B. Damages

**\*3** The FDCPA provides that any debt collector who fails to comply with any provision of the statute is liable to such person for damages, consisting of (1) any actual damage sustained by such person as a result of such failure, (2) additional damages as the court may allow, but not exceeding $1000.00, and (3) the cost of the action together with a reasonable attorney's

fee as determined by the court. 15 U.S.C. § 1692(k). The FDCPA does not contain an express provision for declaratory or injunctive relief, *Sparkman v. Zwicker & Assoc., P.C.,* 374 F.Supp.2d 293, 299 (E.D.N.Y.2005) and therefore courts have found injunctive relief unavailable to individuals under this statute. *Weiss v. Regal Collections,* 385 F.3d 337, 350 (3d Cir.2004); *Bolin v. Sears Roebuck & Co.,* 231 F.3d 970, 977 (5th Cir.2000; *Sibley v. Fulton DeKalb Collection Servs.,* 677 F.2d 830, 834(11th Cir.1982). Accordingly, Mr. Milton is not entitled to injunctive relief, and, to determine whether Rosicki's Rule 68 Offer of Judgment provides Mr. Milton complete relief under 15 U.S.C. § 1692(k), the court must analyze only additional damages, attorney's fees, and actual damages to decide if Mr. Milton could possibly obtain more than $5000.00.

### 1. Additional Damages

Additional damages are limited to $1000.00 per action. *Teng v. Metro. Retail Recovery Inc.,* 851 F.Supp. 61, 69 (E.D.N.Y.1994). While the decision as to whether to award additional damages and the size of such award is "committed to the sound discretion of the district court," *Teng v. Metro. Retail Recovery Inc.,* 851 F.Supp. 61, 69 (E.D.N.Y.1994) *citing Clomon v. Jackson,* 988 F.2d 1314, 1322 (2d Cir.1993), a maximum of $1000.00 can be awarded "for each case, not for each FDCPA violation or improper communication." *Harper v. Better Bus. Servs.,* 961 F.2d 1561, 1563 (11th Cir.1992). Assuming that Rosicki did violate the FDCPA, the court could award Mr. Milton a maximum of $1000.00 in additional damages.

### 2. Attorney's Fees

A prevailing plaintiff in an FDCPA case is ordinarily entitled to recover reasonable attorney's fees under 42 U.S.C. § 1988. *E.g., Hawkins v. 1115 Legal Serv. Care,* 163 F.3d 684, 694 (2d Cir.1998). However, a *pro se* plaintiff cannot recover attorney's fees for representing himself. *Id.* "This principal applies equally to attorneys at law firms that represent them-

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2007 WL 2262893 (E.D.N.Y.)
**(Cite as: 2007 WL 2262893 (E.D.N.Y.))**

selves or the firm in a *pro se* capacity." *Newman and Cahn, LLP v. Sharp,* 388 F.Supp.2d 115, 119(E.D.N.Y.2005). Thus, because Mr. Milton is proceeding *pro se,* he cannot recover any attorney's fees as damages.

### 3. Actual Damages

As discussed above, Mr. Milton cannot recover any attorney's fees and can recover a maximum of $1000.00 in additional damages. Therefore, in order for Rosicki to prove that Mr. Milton could not collect a sum greater than Rosicki's $5000.00 offer, Rosicki must demonstrate that Milton has no potential to collect actual damages of more than $4000.00. Actual damages compensate a plaintiff for out of pocket expenses, personal humiliation, embarrassment, mental anguish, and/or emotional distress that results from defendant's failure to comply with the FDCPA. *Smith v. Law Offices of Mitchell N. Kay,* 124 B.R. 182, 185 (D.Del.1991).

### a. A Reasonable Nexus

**\*4** Mr. Milton could not possibly recover more than $4000.00 because there is no reasonable nexus between the nature of Rosicki's conduct and the emotional and physical distress which Mr. Milton claims to have suffered. *See Donahue v. NFS, Inc.,* 781 F.Supp. 188, 193 (W.D.N.Y.1991). No reasonable nexus exists between Rosicki's alleged FDCPA violations and Mr. Milton's alleged distress because: (1) several months prior to Rosicki's alleged FDCPA violations, Mr. Milton wrote letters to various people complaining of similar distress, and (2) in those earlier letters, Mr. Milton attributed the distress to living in a vermin-infested apartment.

Mr. Milton claims that, as a result of Rosicki's FDCPA violations, he suffered "insomnia, sleeplessness, nightmares, fatigue, physical and mental exhaustion, restlessness, difficulty in concentrating and making decisions, agitation, irritability, digestive system disorders including vomiting, diarrhea and constipation, extreme weight loss, frequent and seri-

ous body aches, extreme panic and anxiety accompanying tachycardia and depressed mood." Rosicki Ex. "G" response # 4, May 16, 2005. However, in his July 18, 2001 letter to Ms. Karen Davis of NCB, Mr. Milton claimed similar ailments which he attributed to living in his vermin-infested, "hazardous," "horrific" apartment. Ex."L." attached to Am. Compl. In the July 2001 letter, Milton complained of "interrupted sleep," "severe consequences on [his] health and well being which has greatly deteriorated during this time," "injury to [ ... ] [his] physical and mental health, safety and well-being," and "[endurance of] unbelievable stress, trauma and anxiety." *Id.* He notes the "devastating effects that these conditions have had on [his] mental and physical health and well-being and the extent to which [he] ha[s] been caused to suffer serious pain and suffering as a result ..." *Id.* Notably, Milton wrote this July 2001 letter several months before he received his first communication from Rosicki in October 2001.

Additionally, in a letter to Mr. Daniel M. Sullivan, the President and Chairman of the Board of Mr. Milton's cooperative, Mr. Milton attributed his ailments to the conditions in his apartment: "these conditions [in my apartment] have prevented me from sleeping, eating, and working, and I have become increasingly ill as a result. Every day is now a struggle for survival. As none of you are blind, you would have to close your eyes to avoid seeing what is happening to me as a result of what you have done to me." Ex."W" attached to Am. Compl. (referring to his health due to the "deplorably atrocious and inhumane" condition of his apartment).

Because Mr. Milton complained of similar ailments before he ever received any communications from Rosicki and attributed these ailments to the stress he endured from living in a vermin-infested apartment, Mr. Milton will be unable to prove any causal connection between his ailments and Rosicki's actions. *See generally Lincoln First Bank of Rochester v. Baker,* 18 B.R. 243 (W.D.N.Y.1982) (holding that,

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

although debt collector harassed and embarrassed debtor during debt collection efforts in violation of the FDCPA, because debtor simultaneously had matrimonial problems with his wife and a surrogate matter in the Appellate Division, debtor failed to prove a causal connection between his illness and debt collector's actions).

**b. $4000 Limit**

   **\*5** Even if Mr. Milton could prove a reasonable nexus between Rosicki's conduct and Mr. Milton's distress, Mr. Milton could not possibly recover more than $4000.00 in actual damages. As will be seen, where there is a nexus, courts generally award actual damages ranging from $100.00 to $5000.00 to debtors whose creditors violated the FDCPA. Any damage award that Mr. Milton could conceivably receive would fall on the low end of this range.

   In circumstances far more egregious than those present here, courts have awarded only several hundred dollars in damages. In *Donahue v. NFS, Inc.,* for example, a debt collector "frequently and persistently" mailed debtor notices with threatening language. *Donahue v. NFS, Inc.,* 781 F.Supp. 188, 191 (W.D.N.Y.1991). The *Donahue* plaintiff claimed that these notices caused her "many physical and emotional problems" and that she suffered "breathlessness, hyperventilation, nervousness, worrying, irritability, loss of concentration, weight gain, headaches, nausea, fear, and depression" *Id.* at 193. The *Donahue* plaintiff's doctor even prescribed her Prozac as a result of her depression. *Id.* She became afraid that she would lose wages or property because of the claimed debt. *Id.* Nonetheless, the *Donahue* court awarded actual damages of only $100.00. *Id.* Similarly, in *Horkey v. JVDB & Assoc., Inc.,* a debt collector called the debtor at her place of employment after the debtor had asked him not to do so. *Horkey v. JVDB & Assoc., Inc.,* 333 F.3d 769, 772 (7th Cir.2003). The debt collector spoke to the debtor's co-worker on the phone and told the co-worker to tell debtor to, "quit being such a [expletive] bitch." *Id.* The court awarded debtor

only $350.00. *Id.* The debt collector in *Teng v. Metropolitan Retail Recovery Inc.,* 851 F.Supp. 61, 67 (E.D.N.Y.1994), not only repeatedly called debtor's place of business, but also lied to debtor's employee, telling him that there had been an "emergency family crisis overseas," in order to get plaintiff's personal information. The debtor thought the call regarded his father-in-law who had been sick in a hospital in Beijing at the time. *Id.* at 63. The debt collector's lie caused the debtor and his wife much strife and emotional distress. *Id.* Moreover, multiple debt collectors from defendant's debt collection agency threatened the *Teng* plaintiff that they were going to "pop a lock" and remove his furniture. *Id.* For his emotional distress, the court awarded the *Teng* plaintiff $1000.00. *Id.* at 71.

   The severity and disruptiveness of Rosicki's alleged statutory violations pale in comparison to actions of debt collectors in the cases discussed above. There are no allegations that Rosicki made threats or disturbed Milton at his place of business. Moreover, Rosicki did not harass Milton nor use abusive language. Rather, Rosicki's alleged FDCPA violations consisted only of the following: failing to respond to Milton's debt validation request, mailing two Notices of Sale prior to responding to Milton's validation request, and mailing a letter that did not indicate it came from a debt collector.

   **\*6** Although there are some cases where courts have awarded over $4000.00, these cases are readily distinguishable from the case at hand. For example, in *Chiverton v. Federal Financial Group,* the court awarded plaintiff $5000.00 for his emotional distress where a debt collector repeatedly called debtor at work after he asked him not to do so, causing debtor to fear loss of employment and loss of an upcoming promotion. *Chiverton v. Fed. Fin. Group,* 399 F.Supp .2d 96, 100-102 (D.Conn.2005). On a particular day, the *Chiverton* debt collector called the debtor at his office five times within a short time span. *Id.* at 99. The debt collector spoke to the debtor's supervisor. *Id.* at

Not Reported in F.Supp.2d, 2007 WL 2262893 (E.D.N.Y.)
**(Cite as: 2007 WL 2262893 (E.D.N.Y.))**

100-102. Moreover, the debtor had to disclose the situation to his boss, which was "uncomfortable and embarrassing." *Id.* at 102. The debt collector used abusive language and caused debtor anxiety, stress, frustration, and shame. *Id.* Here, Rosicki did not invade Milton's privacy by contacting him at work or speaking to any supervisors. Furthermore, Rosicki never used abusive language nor harassed Milton via phone calls or letters. Accordingly, Mr. Milton's claims would not merit an award of such magnitude.

## III. GREENSTEIN STARR AND ATTORNEY ROSCHELLE'S MOTION FOR SUMMARY JUDGMENT

Motions for summary judgment are granted if there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. *Lipton v. Nature Co.,* 71 F.3d 464, 469 (2d Cir.1995). The moving party must demonstrate the absence of any material factual issue genuinely in dispute. *Id.* The court must view the inferences to be drawn from the facts in the light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). However, the non-moving party may not "rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment." *Knight v. U.S. Fire Ins. Co.,* 804 F.2d 9, 12 (2d Cir.1986). The party must produce specific facts sufficient to establish that there is a genuine factual issue for trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Even though the motion for summary judgment is unopposed, the court will determine whether the defendants have met their burden of showing that there is no genuine issue as to any material fact and that they are entitled to judgment as a matter of law. *See CSC Holdings Inc. v. Kelly,* 374 F.Supp. 303, 305 (E.D.N.Y.2005).

The FDCPA imposes certain requirements and restrictions upon "debt collectors" with regard to their attempts to recover funds. *See* 15 U.S.C. § 1692. For purposes of the FDCPA, a debt collector is "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6). The FDCPA applies to the activity of lawyers when they "regularly" engage in debt collection. *See Heintz v. Jenkins,* 514 U.S. 291, 294, 115 S.Ct. 1489, 131 L.Ed.2d 395 (1995). In determining whether a lawyer or firm engages in debt collection "regularly," the Second Circuit has outlined five nonexclusive factors, none of which is determinative:

**\*7** (1) the absolute number of debt collection communications issued, and/or collection-related litigation matters pursued, over the relevant period(s), (2) the frequency of such communications and/or litigation activity, including whether any patterns of such activity are discernible, (3) whether the entity has personnel specifically assigned to work on debt collection activity, (4) whether the entity has systems or contractors in place to facilitate such activity, and (5) whether the activity is undertaken in connection with ongoing client relationships with entities that have retained the lawyer or firm to assist in the collection of outstanding consumer debt obligations.

*Goldstein v. Hutton, Ingram, Yuzek, Gainen, Carroll & Bertolotti,* 374 F.3d 56, 62-63 (2d Cir.2004). Furthermore, "whether the law practice seeks debt collection business by marketing itself as having debt collection expertise may also be an indicator of the regularity of collection as a part of the practice." *Id.* In *Goldstein,* the Second Circuit found that a defendant law firm was a "debt collector" under the FDCPA where the defendant law firm had a system in place for preparing and issuing notices, used law firm letterhead when issuing the collection notices, and issued 145 collection notices within a 12-month period, many of which were issued on be-

Not Reported in F.Supp.2d, 2007 WL 2262893 (E.D.N.Y.)
**(Cite as: 2007 WL 2262893 (E.D.N.Y.))**

half of one particular entity for whom the law firm repeatedly sent collection notices.

On the defendants' prior motion to dismiss, the court held that the allegations of the complaint were sufficient to meet the statutory requirement as described in *Goldstein,* 374 F.3d at 56. The court stated: "Plaintiff's allegations that defendants created the [debt] communication and that defendants engage in this activity regularly are therefore sufficient for the plaintiff to meet his burden," and "[t]he affidavits to the contrary submitted by defendants are not considered on this motion to dismiss." However, the court noted that, "on a motion for summary judgment, the burden would shift to plaintiff to demonstrate that [Greenstein Starr] and Roschelle actually engage in debt collection activity regularly." Defendants now seek summary judgment on this very point.

Other than the bare allegations in his complaint Mr. Milton has not produced any specific facts to support an inference that defendants Greenstein Starr and Attorney Roschelle either (1) engaged in a business the primary purpose of which was the collection of debt or (2) "regularly" engaged in debt collection activity. For example, Mr. Milton has provided no evidence about the number of debt collection communications that the moving defendants issued, the frequency of such communications, or whether the moving defendants have a system to facilitate debt collection activity.

The defendants, however, have produced evidence in the form of an affidavit from Attorney Roschelle which states that Greenstein Starr "was a law firm with a general commercial law practice, having its principal office in New York, New York. At no time was [Greenstein Starr] or I in the business of debt collection, nor did I or [Greenstein Starr] regularly collect or attempt to collect, directly or indirectly, debts owed or claimed to be owed to our clients." Roschelle Aff. ¶ 10. In their brief, the moving defendants also state that Greenstein Starr, in the three years from 1999 to 2001, "only issued 125 creditor rights' letters, and derived less than 1% of its annual income from the assistance of its clients in enforcing their creditors' rights." [FN4] The volume of debt collection activity admitted by the moving defendants in their brief, standing alone, would be insufficient to establish that there is a genuine issue of triable fact about whether the moving defendants were debt collectors for purposes of the FDCPA. The number of debt collection notices that Greenstein Starr admits to sending-125 over three years-is less than one third of the number of debt collection notices-145 in one year-that the law firm sent in the *Goldstein* case. Moreover, unlike the law firm in *Goldstein,* there is no evidence that Greenstein Starr had a system in place for preparing and issuing notices, and there is no pattern or indication that Greenstein Starr repeatedly sent collection notices on behalf of any one particular client or entity. Finally, Mr. Milton has produced no evidence that Greenstein Starr or Attorney Roschelle sought "debt collection business by marketing [themselves] as having debt collection expertise." *Goldstein,* 374 F.3d at 63.

> FN4. The moving defendants attempt to support this statement with a citation to the record evidence that does not mention either of these statistics. However, given that the moving defendants have produced evidence in the form of an affidavit that indicates they were not "debt collectors" under the FDCPA, it is Mr. Milton's burden to produce specific facts sufficient to establish a genuine factual issue about whether the moving defendants were debt collectors.

## IV. MR. MILTON'S OPPOSITION TO THE DEFENDANTS' MOTIONS

**\*8** Mr. Milton's argument that he has been denied his fundamental due process rights because he has not had a full and fair opportunity to discover facts relevant to his case is unpersuasive. The deadline for discovery in this case was extended twice at Mr.

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2007 WL 2262893 (E.D.N.Y.)
**(Cite as: 2007 WL 2262893 (E.D.N.Y.))**

Milton's request, and Mr. Milton did not object to the court's January 30, 2006 order which set the briefing schedule for the defendants' motions until the date that his opposition papers were due on June 30, 2006. Mr. Milton also failed to move to compel or seek the assistance of the court in obtaining discovery responses until June 30, 2006, more than two months after discovery closed. Furthermore, to delay a court's consideration of a summary judgment motion based on incomplete discovery, a non-movant must file an affidavit explaining: (1) the nature of the uncompleted discovery, i.e., what facts are sought and how they are to be obtained; (2) how those facts are reasonably expected to create a genuine issue of material fact; (3) what efforts the affiant has made to obtain those facts; and (4) why those efforts were unsuccessful. *Burlington Coat Factory Warehouse Corp. v. Esprit de Corp.,* 769 F.2d 919, 926 (2d Cir.1985). "A reference to Rule 56(f) and to the need for additional discovery in a memorandum of law in opposition to a motion for summary judgment is not an adequate substitute for a Rule 56(f) affidavit, and the failure to file an affidavit under Rule 56(f) is itself sufficient grounds to reject a claim that the opportunity for discovery was inadequate." *Paddington Partners v. Bouchard,* 34 F.3d 1132, 1137-1139 (2d Cir.1994). Mr. Milton has failed to file an affidavit under Rule 56(f) and has failed to outline (1) the specific nature of the uncompleted discovery, (2) how the discovery sought is reasonably expected to create a genuine issue of material fact, and (3) what specific efforts he has made to obtain discovery.

## V. CONCLUSION

Because defendants Greenstein Starr and Attorney Roschelle have produced evidence indicating that they are not "debt collectors," and Mr. Milton has failed to produce specific facts sufficient to raise a triable issue of fact about whether the moving defendants qualify as "debt collectors" under the FDCPA, summary judgment is granted as to Greenstein Starr and Attorney Roschelle. The Clerk of Court is directed to enter judgment for defendants Greenstein Starr and Attorney Roschelle.

For the reasons outlined above, Rosicki's motion to dismiss for lack of subject matter jurisdiction is granted because Rosicki's Rule 68 Offer of Judgment renders Mr. Milton's action against Rosicki moot. The Clerk of Court is directed to enter judgment against defendant Rosicki in accordance with its $5,000.00 Rule 68 offer of judgment. *See Ambalu,* 194 F.R.D. at 453.

**SO ORDERED.**

E.D.N.Y.,2007.
Milton v. Rosicki, Rosicki & Associates, P.C.
Not Reported in F.Supp.2d, 2007 WL 2262893 (E.D.N.Y.)

END OF DOCUMENT

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.


Not Reported in F.Supp.2d, 2012 WL 1811628 (S.D.N.Y.)
**(Cite as: 2012 WL 1811628 (S.D.N.Y.))**

C

Only the Westlaw citation is currently available.

United States District Court,
S.D. New York.
Ruth WOODS, Plaintiff,
v.
SIEGER, ROSS & AGUIRE, LLC, Doe 1, Doe 2, and
Doe 3, Defendants.

No. 11 Civ. 5698(JFK).
May 18, 2012.

Jesse Langel, Esq., The Langel Firm, for Plaintiff.

### Opinion and Order

JOHN F. KEENAN, District Judge.

*1 Before the Court is Plaintiff Ruth Woods'
("Woods" or "Plaintiff") motion for entry of a default
judgment and an award of statutory and actual dam-
ages, punitive damages, and attorneys' fees and costs.
For the reasons that follow, the motion for default
judgment is granted in part in the amount of
$8,197.00.

### I. Background

In a complaint dated August 16, 2011, Woods
alleges that Defendant Sieger, Ross & Aguire, LLC
("Sieger Ross" or "Defendant"), a New York domestic
limited liability company with its principal place of
business in Buffalo, New York, is a "debt collector" as
defined by 15 U.S.C. § 1629a(6). (Compl.¶¶ 12, 14).
In or around mid–2007, Woods applied online for a
$500 payday loan from a company called Eagle Fi-
nance. (Id. ¶ 22). The payday loan is alleged to be a
consumer debt as defined by 15 U.S.C. § 1692a(5).
(Id. ¶¶ 24–25). She believed that a repayment amount
representing the $500 principal plus interest would be

withdrawn from her Wachovia bank account ap-
proximately two weeks later. (Id. ¶¶ 23, 28). However,
one week prior to the repayment date, Woods closed
her Wachovia account allegedly because of unrelated
unauthorized charges in the account; Woods claims
that she notified Eagle Finance of the change of ac-
count. (Id. ¶ 28). The complaint does not allege
whether the payday loan was ever in fact repaid.

On September 25, 27, and 28, 2010, a repre-
sentative of Sieger, Ross called and spoke to Woods'
aunt, claiming that Sieger, Ross was a law firm look-
ing for Woods in connection with an unpaid debt. (Id.
¶¶ 29–31). Woods returned the call on the morning of
September 29, 2010. (Id. ¶ 33). Woods spoke with a
Sieger, Ross employee who allegedly told Woods that
she would "be sued" and would be "facing jail time"
for her unpaid debt; he pressured her to borrow money
or pay the debt using a credit card. (Id.). The Sieger,
Ross representative called Woods three additional
times on September 29, 2010—at 11:22 a.m., 1:52
p.m., and 1:57 p.m.. (Id. ¶¶ 34–35). Woods did not
answer the first call. (Id.). The second and third calls
lasted a combined total of three minutes and fif-
ty-seven seconds, during which time the representa-
tive told Woods that "a bad check was issued out of
[her] checking account," falsely stated that "New
York State has tax warrants on [her] right now,"
threatened to contact the District Attorney, and
claimed they would turn her over to tax authorities if
the consumer debt was not resolved. (Id.). Woods
requested that Sieger, Ross provide documentation
regarding the alleged debt, which was initially re-
fused, but later that day, the Sieger, Ross representa-
tive emailed Woods a letter stating that "[p]er your
conversation with our office on 9/29/10, it is our un-
derstanding that your delinquent claim has not been
paid and the total amount due is $1109.00. This pay-
ment will be due in 1 installment of the following: (1)
$1109.00 due by 9/29/10.... Therefore, by paying

Not Reported in F.Supp.2d, 2012 WL 1811628 (S.D.N.Y.)
**(Cite as: 2012 WL 1811628 (S.D.N.Y.))**

$1109.00, this debt can be completely resolved and will cancel any possible current or future legal action." (*Id.,* Ex. A). There is no indication in the complaint that Woods acquiesced to the payment demand, or that anything happened to her after she refused to remit payment. The week after the purported payment deadline expired, Sieger, Ross representatives called Woods two times and left messages. (*Id.* ¶ 40).

**\*2** As a result of these contacts, Woods claims to have suffered sleep deprivation, stomach pains, anxiety, panic, nervousness, headaches, fear, worry, embarrassment, humiliation, intimidation, indignation, lost concentration, loss of tranquility, and crying from worrying. (*Id.* ¶ 42). She also claims that she chose not to seek new housing or take a licensing exam, a prerequisite for employment with New York Life Insurance Company, because she feared the results of credit checks that accompanied the exam. (*Id.* ¶¶ 43–44). She brings claims for: (1) violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692; (2) violation of New York law prohibiting deceptive practices, N.Y. Gen. Bus. Law § 349; (3) intentional infliction of emotional distress; and (4) common law fraud.

Service of the complaint was completed on August 26, 2011 by serving two copies of the complaint and the statutory fee on the Secretary of State of New York in Albany. *See* N.Y. Ltd. Liab. Co. Law § 303(a). (Feb. 27, 2012 Langel Decl., Ex. 2). The Court scheduled an initial case conference for November 4, 2011. By letter dated September 13, 2011, Sieger, Ross requested a 60–day adjournment to retain counsel; accordingly, the Court extended Sieger, Ross' time to answer or otherwise respond to the complaint and adjourned the initial conference until December 1, 2011. (*Id.,* Ex. 3). Only Plaintiff's counsel appeared at the conference, and he informed the Court that the parties had reached a settlement. The Court entered an order of discontinuance giving the parties 60 days to consummate their settlement. However, by letter dated January 17, 2012, Plaintiff's counsel notified the Court

that the settlement had not come to fruition and requested that the Court reopen the case. In an order dated January 18, 2012, the Court restored this case to its active docket and scheduled a pre-trial conference for February 16, 2012. (*Id.,* Ex. 5). Defendants failed to appear at the conference, at which time the Court gave Plaintiff's counsel leave to bring an order to show cause for a default judgment. The order to show cause, filed March 5, 2012, notified Defendant that failure to appear on the March 20, 2012 return date would result in an order directing the Clerk of Court to issue a certificate of default pursuant to Local Civil Rule 55.1; however, Sieger, Ross did not appear on March 20, 2012, and the Court granted Woods leave to file a motion for default judgment. Consequently, by motion dated March 29, 2012, Woods requests that the Court enter a default judgment against Sieger, Ross [FN1] and determine the damages to which she is entitled.

> FN1. The Doe Defendants were never served, and Woods requests relief only as to Defendant Sieger, Ross.

## II. Discussion
### A. Entry of Default

"When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed.R.Civ.P. 55(a). In accordance with Rule 55(a) and Local Civil Rule 55.1, Plaintiff's counsel submitted a declaration dated February 27, 2012, affirming that: Defendant Sieger, Ross is a limited liability company and is not an infant, in the military, or an incompetent person (Langel Decl. ¶ 13); Defendant Sieger, Ross has failed to plead or otherwise defend the action (*Id.*); and the complaint to which Defendant failed to respond was properly served pursuant to New York Limited Liability Company Law § 303 (*Id.* ¶¶ 5, 13; Ex. 2). Consequently, the Clerk is directed to enter Defendant Sieger, Ross' default on the record.

### B. Default Judgment

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2012 WL 1811628 (S.D.N.Y.)
**(Cite as: 2012 WL 1811628 (S.D.N.Y.))**

**\*3** Plaintiff now applies to the Court pursuant to Rule 55(b)(2) of the Federal Rules of Civil Procedure for entry of a default judgment in her favor. In light of Defendant's default, the Court accepts the factual allegations in the complaint as true, except those relating to damages, and draws all reasonable inferences in Plaintiff's favor. *See Finkel v. Romanowicz,* 577 F.3d 79, 84 (2d Cir.2009); *Au Bon Pain Corp. v. Artect, Inc.,* 653 F.2d 61, 65 (2d Cir.1981). However, the "district court has discretion under Rule 55(b)(2) once a default is determined to require proof of necessary facts and need not agree that the alleged facts constitute a valid cause of action." *Au Bon Pain Corp.,* 653 F.2d at 65. Furthermore, the district court does not automatically accept the allegations of the complaint relating to damages. *See Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.,* 973 F.2d 155, 158 (2d Cir.1992) (citing *Flaks v. Koegel,* 504 F.2d 702, 707 (2d Cir.1974)). Although an evidentiary hearing under Rule 55(b)(2) is not required, plaintiff must establish through affidavits or other evidence "a basis for the damages specified in the default judgment." *Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp.,* 109 F.3d 105, 111 (2d Cir.1997).

### 1. FDCPA Claim

Plaintiff asserts violations of numerous provisions of the FDCPA, including §§ 1692c(b) (prohibiting communication with third parties regarding collection of a debt), 1692d, 1692d(1), 1692d(2) (prohibiting harassing and abusive conduct in connection with collection of a debt), and 1692e, 1692e(1), 1692e(3), 1692e(4), 1692e(5), 1692e(7), 1692e(8), 1692e(10) (prohibiting false, deceptive, or misleading representations in connection with collection of a debt). Based on these violations, she seeks $1,000 in statutory damages, $5,000 in actual damages, and $6,197 in attorneys' fees and costs.

The FDCPA is a strict liability statute, and a single violation is sufficient to establish liability. *See Ellis v. Solomon & Solomon,* P.C., 591 F.3d 130, 133, 135 (2d Cir.2010); *Clomon v. Jackson,* 988 F.2d 1314,

1318 (2d Cir.1993). Therefore, taking as true the allegation that Defendant contacted Plaintiff's aunt three times regarding Plaintiff's debt, and contacted Plaintiff herself at least five times, threatening her with civil and criminal penalties, the Court finds that the complaint adequately establishes Defendant's violation of, at a minimum, FDCPA §§ 1692c(b) and 1692e(4).

### a. Statutory Damages

The FDCPA provides for a maximum of $1,000 in statutory damages. 15 U.S.C. § 1692k(a)(2)(A). "All that is required for an award of statutory damages is proof that the statute was violated, although a court must then exercise its discretion to determine how much to award, up to the $1,000 ceiling." *Savino v. Computer Credit Inc.,* 164 F.3d 81, 86 (2d Cir.1998). In calculating an appropriate statutory damages award, the district court considers "the frequency and persistence of noncompliance by the debt collector, the nature of such noncompliance, and the extent to which such noncompliance was intentional." 15 U.S.C. § 1692k(b)(1).

**\*4** Generally, courts have awarded less than the $1,000 statutory maximum damages "where there is no repeated pattern of intentional abuse or where the violation was technical." *Dunn v. Advanced Credit Recovery Inc.,* No. 11 Civ. 4023, 2012 WL 676350, at \*3 (S.D .N.Y. Mar. 1, 2012) (quotation omitted); *see, e.g., Cordero v. Collection Co., Inc.,* No. 10 Civ. 5960, 2012 WL 1118210, at \*2 (E.D.N.Y. Apr. 3, 2012) (awarding $250 statutory damages where defendant sent plaintiff one letter requesting payment of an outstanding medical bill in order to avoid any further legal action); *Copper v. Global Check & Credit Servs., LLC,* No. 10 Civ. 145S, 2010 WL 5463338, at \*2 (W.D.N.Y. Dec. 29, 2010) (awarding $250 statutory damages where defendant called plaintiff's daughter more than once, disclosed plaintiff's debt, and failed to provide proper notice of the debt). In contrast, Plaintiff here has alleged at least five personal contacts, an additional three phone calls to a third party without consent, a high pressure letter

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2012 WL 1811628 (S.D.N.Y.)
**(Cite as: 2012 WL 1811628 (S.D.N.Y.))**

demanding repayment of the entire debt within 24 hours, abusive language, and several threats of legal action. This conduct is sufficiently severe to warrant the requested $1,000 statutory damages award. *Cf. Dunn, 2012 WL 676350, at \*4* (awarding $1,000 statutory damages where defendant left two messages and spoke with a third party about plaintiff's debt, disclosed plaintiff's date of birth and social security number to a third party, and threatened plaintiff with legal action); *Robbins v. Viking Recovery Servs. LLC, No. 09 Civ. 1030A, 2010 WL 1840318, at \*2 (W.D.N.Y. May 7, 2010)* (awarding $1,000 statutory damages where defendant made "frequent telephone calls that harassed plaintiff, that involved third parties without authorization, and that targeted plaintiff's place of employment"); *Healy v. Midpoint Resolution Group, LLC, No. 09 Civ. 117S, 2010 WL 890996, at \*2–3 (W.D.N.Y. Mar. 10, 2010)* (awarding $1,000 statutory damages where defendant called plaintiff at home on more than one occasion, falsely represented that it had commenced lawsuit, spoke with plaintiff's daughter about debt, and attempted to contact plaintiff after being notified to contact counsel).

### b. Actual Damages

*Section 1692k(a)(1)* also provides for an award of actual damages sustained by plaintiff as a result of a defendant debt collector's FDCPA violation. Actual damages are intended to "compensate a plaintiff for out of pocket expenses, personal humiliation, embarrassment, mental anguish, and/or emotional distress that results from defendant's failure to comply with the FDCPA." *Milton v. Rosicki, Rosicki & Assocs., P.C., No. 02 Civ. 3052, 2007 WL 2262893, at \*3 (E.D.N.Y. Aug. 3, 2007).* The only evidence submitted in support of actual damages is Plaintiff's own declaration in which she requests an award of $5,000 to compensate for emotional distress, including feelings of fear, anxiety, panic, and nervousness, as well as stomach pains, sleep loss, and headaches she attributes to Defendant's calls. (Woods Decl. ¶ 18). Although there is no evidence that Defendant contacted Plaintiff or her aunt after the beginning of October 2010, Plaintiff

states that she lived in fear for more than one year; she further claims that worry about her credit history prevented her from moving into a new apartment and from taking a state exam necessary to obtain a job at New York Life Insurance Company. (*Id.* ¶¶ 19, 21–22). While emotional distress is to be expected in light of the threats and abusive conduct Defendant is deemed to have committed, the Court believes that a $5,000 award is excessive considering that Defendant's contacts with Plaintiff and her aunt spanned no more than two weeks and that there is no evidence that Plaintiff sought or received medical treatment as a result of these contacts. Furthermore, the Court has some difficulty accepting Plaintiff's assertion that she "lived in constant fear that [her] credit history was or would become harmed" when Plaintiff acknowledges that "her own internet research" revealed that Defendant's threats were no more than a "scam," (Woods Decl. ¶¶ 19, 23), and when Plaintiff is legally entitled to a free annual credit report and could have verified her credit history at any time. Moreover, there is no evidence that Plaintiff could or would have obtained new housing or employment but for Defendant's conduct. The Court finds that an award of $1,000 in actual damages will fairly compensate Plaintiff and is commensurate with the evidence presented in this case and with awards in similar cases in this Circuit. *Cf. Pearce v. Ethical Asset Mgmt., Inc., No. 07 Civ. 718S, 2010 WL 932597, at \*5 (W.D.N.Y. Mar. 11, 2010)* (awarding $750 in emotional distress damages where Defendant's disclosure of unpaid debt to plaintiff's daughter caused plaintiff humiliation and fear for daughter's welfare); *Krueger v. Ellis, Crosby & Assocs., Inc., No. 05 Civ. 160, 2006 WL 3791402, at \*2 (D.Conn. Nov. 9, 2006)* (awarding no actual damages for emotional distress where plaintiff's evidence consisted solely of a "generalized, blanket assertion" that "the calls from Defendant caused him 'anxiety, embarrassment, inconvenience, and worry' "); *Gervais v. O'Connell, Harris & Assocs., Inc., 297 F.Supp.2d 435, 440 (D.Conn.2003)* ("The Court is sympathetic with plaintiff's claim and believes that he did, in fact, suffer some emotional distress as a result of defendants'

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2012 WL 1811628 (S.D.N.Y.)
(Cite as: 2012 WL 1811628 (S.D.N.Y.))

heavy—handed and unlawful conduct. However, the events in question were brief in time; plaintiff concedes that defendants never expressly threatened him; he acknowledges that he did not need the care of a physician as a result of these events .... Accordingly, the Court awards plaintiff $1,500 for emotional and mental distress damages under FDCPA."); *Donahue v. NFS, Inc.,* 781 F.Supp. 188, 194 (W.D.N.Y.1991) (awarding $100 in actual damages where "plaintiff suffered some quantum of mental or physical distress stemming in part from" her receipt of three collection notices).

### c. Attorneys' Fees and Costs

**\*5** Finally, the FDCPA provides for recovery of reasonable attorneys' fees and costs. *See* 15 U.S.C. § 1692k(a)(3). Plaintiff's counsel requests $6,197 in attorneys' fees, representing 27.13 hours of attorney time at a rate of $200 per hour, 4.5 hours of paralegal time at a rate of $75 per hour, the $350 court filing fee, and an $84 service of process fee.

The starting point in determining attorneys' fee awards is calculation of the "lodestar" by multiplying a reasonable hourly rate by the number of hours reasonably expended on the litigation; the lodestar creates a presumptively reasonable fee. *See Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany,* 522 F.3d 182, 188–90 (2d Cir.2008). The hourly rates used in determining a fee award should be "what a reasonable, paying client would be willing to pay." *Id.* at 184. Reference to market rates "prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation" can assist the court in determining the reasonable hourly rate to be applied. *Gierlinger v. Gleason,* 160 F.3d 858, 882 (2d Cir.1998). To determine the amount of attorney time reasonably spent prosecuting the case, "the court looks to its own familiarity with the case and ... its experience generally as well as to the evidentiary submissions and arguments of the parties." *Clarke v. Frank,* 960 F.2d 1146, 1153 (2d Cir.1992) (internal quotation omitted).

Plaintiff's counsel Jesse Langel is a 2004 graduate of New York Law School. (Langel Decl. ¶ 17). After working for three years as a plaintiff's attorney in medical malpractice cases, in late 2009, Mr. Langel founded his own law firm; he currently focuses his practice on representing debtors in debt collection cases. (*Id.* ¶¶ 19–20). Mr. Langel has been practicing in this area of law for approximately two years, during which time he has represented several clients in New York state and federal courts. (*Id.* ¶¶ 22–23). Mr. Langel submits that compensation at a rate of $200 per hour is reasonable. "[I]n this district, hourly rates awarded to civil litigators in small firms have frequently ranged from $225–$375 per hour." *Margolies v. Cnty. of Putnum* N.Y., No. 09 Civ.2061, 2011 WL 721698, at *2–3 (S.D.N.Y. Feb. 23, 2011) (awarding attorneys' fees at a rate of $250 per hour to attorney who graduated from law school in 2000 but otherwise "failed to provide information as to his experience, reputation and ability"); *see Dunn,* 2012 WL 676350, at *6 (awarding attorneys' fees at a rate of $300 per hour to two attorneys in FDCPA case licensed for 15 and 25 years respectively); *Sparkman v. Zwicker & Assocs.,* P.C., No. 04 Civ. 1143, 2006 WL 463939, at *1 (E.D.N.Y. Feb. 27, 2006) (noting that "district courts in this circuit have awarded attorney's fees at rates ranging from $200 to $250 per hour for experienced attorneys in FDCPA cases" and awarding attorney an hourly rate of $200); *Kapoor v. Rosenthal,* 269 F.Supp.2d 408, 415 (S.D.N.Y.2003) (awarding attorneys' fees at a rate of $225 per hour to two attorneys in FDCPA case who practiced since 1993 and 1999 respectively). In light of Mr. Langel's relative youth and inexperience prosecuting FDCPA actions, the Court finds that an hourly rate on the low end of the spectrum in FDCPA cases is appropriate, and therefore concludes that $200 per hour is reasonable compensation for the legal work performed in this case.

**\*6** Mr. Langel submitted contemporaneous time records indicating that between September 29, 2010

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

and March 27, 2012, he spent 27.13 hours consulting with his client, drafting the complaint, negotiating the settlement that ultimately fell through, appearing before the Court, conducting legal research, and preparing the default judgment motion papers. (Langel Decl., Ex. 3). His paralegal spent 4.5 hours on administrative tasks such as preparing documents for service. The time spent on what was an uncomplicated and uncontested case is somewhat higher than billings in other FDCPA default judgment cases, but not so high as to be unreasonable. *Cf. Dunn,* 2012 WL 676350, at *6 (approving 18.25 hours of attorney time in FDCPA default judgment case). Therefore, the Court awards attorneys' fees to Plaintiff in the requested amount of $5,763. Moreover, reimbursement of the $350 court filing fee and $84 service of process fee to the prevailing Plaintiff is appropriate.

### 2. Additional Claims

Plaintiff asserts additional claims for violation of New York's deceptive acts and practices statute, N.Y. Gen. Bus. Law § 349, intentional infliction of emotional distress, and common law fraud. She seeks $1,000 in actual damages for the deceptive practices claim, and $20,000 in punitive damages for the common law tort claims.

#### a. New York Deceptive Practices Claim

New York law provides a private right of action for any person injured by "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state." N.Y. Gen. Bus. Law § 349(a), (h). A plaintiff with a successful claim may recover actual damages "not to exceed three times the actual damages up to one thousand dollars." *Id.* § 349(h). "To state a claim under § 349, a plaintiff must allege: (1) the act or practice was consumer-oriented; (2) the act or practice was misleading in a material respect; and (3) the plaintiff was injured as a result." *Spagnola v. Chubb Corp.,* 574 F.3d 64, 74 (2d Cir.2009). To satisfy the consumer-oriented element of a § 349 claim, plaintiff need not allege that "the defendant committed the

complained-of acts repeatedly—either to the same plaintiff or to other consumers—but instead must demonstrate that the acts or practices have a broader impact on consumers at large." *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.,* 647 N.E.2d 741, 744 (N.Y.1995).

The complaint alleges that "[e]ach deceptive practice and act alleged is a recurring practice that the defendants have made, not just to Ruth Woods, but against large numbers of consumers as part of a policy and practice of extorting money from unwary consumers. (Compl.¶ 54). Furthermore, Plaintiff alleges that she believed, as would any reasonable person, that Defendant "could hurt her using 'tax warrants,' 'dockets,' and 'district attorneys.' " (*Id* . ¶ 41). Although bare, accepting these allegations as true, Plaintiff has likely established the first and second elements of a § 349 claim. However, the New York state deceptive practices claim is premised on the same facts as the FDCPA claim and seeks actual damages for the same "sleep deprivation, stomach pains, anxiety, panic, nervousness, headaches, fear, worry, embarrassment, humiliation, intimidation, indignation, lost concentration, loss of tranquility, and crying from worrying," (Compl.¶ 42), that formed the basis of her FDCPA recovery. Indeed, the complaint does not allege any independent injury caused by Defendant's misleading statements, but merely repeats that as a result of the New York deceptive practices violation, Plaintiff "suffered actual damages, which include those injuries set forth in paragraphs 39 through 45 [the FDCPA claim] in this complaint." (Compl.¶ 56). The Court has already determined that a $1,000 damages award will fairly and adequately compensate Plaintiff for the entirety of the emotional distress she suffered due to Defendant's abusive conduct. The fact that Plaintiff presented both state and federal law theories of liability does not entitle her to separate recoveries for a single injury—that is, her emotional distress. *See Shepherd v. Law Offices of Cohen & Slamowitz, LLP,* 668 F.Supp.2d 579, 582 (S.D.N .Y.2009) ("[P]laintiff will not be able to recover stat-

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2012 WL 1811628 (S.D.N.Y.)
**(Cite as: 2012 WL 1811628 (S.D.N.Y.))**

utory damages under both FDCPA and the GBL [because] that would violate the rule against double recovery for the same injury."); *cf. Medina v. District of Columbia,* 643 F.3d 323, 328 (D.C.Cir.2011) ("If a federal claim and a state claim arise from the same operative facts, and seek identical relief, an award of damages under both theories will constitute double recovery." (internal quotation omitted)). Thus, even if the complaint adequately states a claim, Plaintiff cannot independently recover actual damages under New York state law. Therefore, Plaintiff's application for a default judgment in the amount of $1,000 on her § 349 claim is denied.

### b. Intentional Infliction of Emotional Distress

**\*7** To make out a claim of intentional infliction of emotional distress under New York law, plaintiff must demonstrate: "(1) extreme and outrageous conduct; (2) intent to cause, or reckless disregard of a substantial probability of causing, severe emotional distress; (3) a causal connection between the conduct and the injury; and (4) severe emotional distress." *Conboy v. AT & T Corp .,* 241 F.3d 242, 258 (2d Cir.2001). The alleged conduct must be " 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.' " *Howell v. New York Post Co.,* Inc., 612 N.E.2d 699, 702 (N.Y.1993) (quoting *Murphy v. Am. Home Prods. Corp.,* 448 N.E.2d 86, 90 (N.Y.1983)); *see Stuto v. Fleishman,* 164 F.3d 820, 827 (2d Cir.1999) (noting that under New York law "[i]t has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by 'malice,' or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort" (quoting Restatement (Second) of Torts § 46 cmt. d)). The requirements for a successful claim are so "rigorous, and difficult to satisfy" that "of the intentional infliction of emotional distress claims considered by [the New York Court of Appeals], every one has failed because the alleged

conduct was not sufficiently outrageous." *Howell,* 612 N.E.2d at 702.

Although the allegations in the complaint are taken as true, they do not rise to the level of atrocity required to make out an intentional infliction of emotional distress claim in New York. First, "[c]ourts are reluctant to allow recovery under the banner of intentional infliction of emotional distress absent a deliberate and malicious campaign of harassment or intimidation." *Cohn—Frankel v. United Synagogue of Conservative Judaism,* 667 N.Y.S.2d 360, 362 (N.Y.App.Div.1998). The complaint alleges that Defendant contacted Plaintiff's aunt three times, Plaintiff herself contacted Defendant one time, and Defendant called her five times over a period of approximately two weeks. Certainly the frequency and duration of Defendant's contacts are insufficiently outrageous to be the type of "campaign" required to establish the claim. *See Conboy v. AT & T Corp.,* 84 F.Supp.2d 492, 497, 507 (S.D.N .Y.2000), *aff'd,* 241 F.3d 242 (2d Cir.2001) (granting motion to dismiss intentional infliction of emotional distress claim where plaintiffs alleged that debt collector obtained private information, including their unlisted telephone number, and proceeded to contact them between 30 and 50 times in one month). Moreover, although the Court in no way condones Defendant's conduct and choice of language towards Plaintiff, a single reference to contacting the District Attorney if she did not repay the outstanding consumer debt, and the bizarre threat to contact tax authorities with respect to unrelated, allegedly delinquent tax payments cannot satisfy the exacting standard under New York law. Indeed, New York courts have rejected intentional infliction of emotional distress claims involving language and conduct even more extreme than Defendant's. *See Am. Credit Card Processing Corp. v. Fairchild,* 810 N.Y.S.2d 874, 877, 880 (N.Y.Sup.2006) (finding debt collector's threats that "The secret service is going to arrest you," "You will lose your house," and "They are going to bury you, John, you lying bastard," to be "rash, rude, callous, unprofessional and improper" but

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2012 WL 1811628 (S.D.N.Y.)
**(Cite as: 2012 WL 1811628 (S.D.N.Y.))**

not so outrageous to establish a cause of action for intentional infliction of emotional distress). Indeed, Plaintiff can cite only one New York case in support of her application for default judgment on this claim, *Long v. Beneficial Finance Company of New York,* 330 N.Y.S.2d 664 (N.Y.App.Div.1972). However, *Long* merely recognized that intentional infliction of emotional distress may be cognizable in the context of debtor-creditor relationships, but it in no way addresses the type of conduct necessary to succeed on such claim. The Court finds as a matter of law that Defendant's conduct does not meet the strict standard for an intentional infliction of emotional distress claim.

**\*8** Additionally, there is a fair amount of caselaw in New York holding that a lack of medical evidence regarding plaintiff's emotional distress is fatal to an intentional infliction of emotional distress claim because plaintiff has failed to offer non-speculative proof establishing the "severe emotional distress" element of the claim. *See Cusimano v. United Health Servs. Hosps., Inc.,* 937 N.Y.S.2d 413, 418 (N.Y.App.Div.2012) (affirming grant of summary judgment in favor of defendant where "plaintiff presented no medical evidence to substantiate her general claims that she suffered severe emotional distress"); *Roche v. Claverack Coop. Ins. Co.,* 874 N.Y.S.2d 592, 597 (N.Y.App.Div.2009) ("Due to plaintiff's failure to present medical evidence of severe emotional distress, defendants were entitled to dismissal of plaintiff's speculative cause of action for intentional infliction of emotional distress."); *Walentas v. Johnes,* 683 N.Y.S.2d 56, 58 (N.Y.App.Div.1999) (holding that to make out a claim for intentional infliction of emotional distress "[t]he plaintiff is required to establish that severe emotional distress was suffered, which must be supported by medical evidence, not the mere recitation of speculative claims") (citing *Leone v. Leewood Service Station, Inc.,* 624 N.Y.S.2d 610 (N.Y.App.Div.1995))); *Christenson v. Gutman,* 671 N.Y.S.2d 835, 839 (N.Y.App.Div.1998) (affirming denial of leave to amend complaint to add intentional

infliction of emotional distress claim, despite the fact that "the alleged conduct may have exceeded the bounds of decency within a civilized society," because "plaintiffs' failure to submit medical evidence or the need to seek medical attention resulted in conclusory or speculative allegations that were properly dismissed on summary judgment"). Here, there are no allegations that Plaintiff ever sought medical treatment for her emotional distress, nor did Plaintiff submit any medical evidence in support of her application for a default judgment. The Court has found that Plaintiff is entitled to compensation for her general emotional distress—although less than she requested—but that finding does not *ipso facto* create a valid cause of action for intentional infliction of emotional distress. The Court accepts that Plaintiff suffered "sleep deprivation, stomach pains, anxiety, panic, nervousness, headaches, fear, worry, embarrassment, humiliation, intimidation, indignation, lost concentration, loss of tranquility, and crying from worrying," but her recitation of those symptoms, standing alone, does not establish the severe emotional distress necessary to make out a claim. Thus, Plaintiff's application for a default judgment on her intentional infliction of emotional distress claim is denied.

**c. Common Law Fraud**

To establish a claim for common law fraud under New York law, plaintiff must allege "(1) a material misrepresentation or omission of fact, (2) made with knowledge of its falsity, (3) with an intent to defraud, and (4) reasonable reliance on the part of the plaintiff, (5) that causes damage to the plaintiff." *Schlaifer Nance & Co. v. Estate of Warhol,* 119 F.3d 91, 98 (2d Cir.1997). "[T]he damages incurred by reason of the fraudulent conduct must be actual pecuniary losses." *Pope v. Saget,* 817 N.Y.S.2d 1, 4 (N.Y.App.Div.2006).

**\*9** The Court assumes for the moment that Plaintiff has adequately established material misrepresentations—that is, the existence of a debt and the legal consequences of failing to repay the debt—as

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2012 WL 1811628 (S.D.N.Y.)
**(Cite as: 2012 WL 1811628 (S.D.N.Y.))**

well as Defendant's knowledge and scienter and focuses on the reliance and injury elements of fraud claim. Plaintiff alleges that she justifiably relied upon Defendant's misrepresentations by refraining from moving and from taking a licensing exam. However, Plaintiff, who was unemployed at the time, stated that she did not pursue the exam or new housing due to her fear of a credit check, not her fear that Defendant would make good on its threat to report her to the District Attorney. Of course, an unpaid debt would have some affect on her credit, but there is nothing in the complaint establishing Plaintiff's prior credit history such that the Court can link Defendant's misrepresentation regarding a purported $1,109 debt to Plaintiff's fear of a credit reputation so impugned that she would not be able to obtain housing or employment. Furthermore, the Court has difficulty accepting the reasonableness of Plaintiff's reliance when she could have obtained a free copy of her credit report and verified her own credit score at any time.

More importantly, however, Plaintiff has failed to allege any cognizable fraud injury. There is no indication in the complaint that Plaintiff ever acquiesced to Defendant's demands for payment, and therefore, she suffered no out—of—pocket financial loss as a result of Defendant's misrepresentations. The only other possible claims of injury the Court can discern are the lost opportunities for employment with the New York Life Insurance Company and for new housing. Those injuries are speculative, since there are no allegations that Plaintiff applied for and could or would have obtained the desired job or apartment but for Defendant's conduct. In any event, forgone opportunities are not redressable under a common law fraud theory. *See Rather v. CBS Corp.,* 886 N.Y.S.2d 121, 127 (N.Y.App.Div.2009) ("Damages are to be calculated to compensate plaintiffs for what they lost because of the fraud, not to compensate them for what they might have gained.... Rather's claim that, but for CBS' fraud, he could have had more remunerative employment than that which he ultimately obtained at HDNet is unavailing. The loss of an alternative contractual bargain cannot serve as a basis for fraud or misrepresentation damages because the loss of the bargain was undeterminable and speculative." (internal quotations and alterations omitted)); *see also Pope,* 817 N.Y.S.2d at 5 (reversing lower court's denial of motion to dismiss fraud claim because "the sum total of damages appears to have been non-pecuniary aggravation and attorneys' fees. The measure of damages in an action predicated on fraud is the actual pecuniary loss. Here, ... plaintiffs suffered no such loss, let alone such loss attributable to defendants"); *Stich v. Oakdale Dental Center,* P.C., 501 N.Y.S.2d 529, 531 (N.Y.App.Div.1986) (reversing lower court's denial of motion for summary judgment on fraud claim because "plaintiff has failed to submit any proof of actual pecuniary injury, the sole compensable form of damages in a fraud action").

**\*10** As Plaintiff has not asserted any underlying causes of action upon which a demand for punitive damages could be grounded, the application for a default judgment in the amount of $20,000 in punitive damages is denied.

#### d. Pre–Judgment Interest

Neither the complaint nor the papers in support of Plaintiff's application for a default judgment demand prejudgment interest. However, the proposed one—page default judgment submitted by Plaintiff's counsel includes a line item for pre—judgment interest at 9% from September 25, 2010. The decision to award pre—judgment interest in a federal question case rests within the sound discretion of the district court, and any award "should be a function of (i) the need to fully compensate the wronged party for actual damages suffered, (ii) considerations of fairness and the relative equities of the award, (iii) the remedial purpose of the statute involved, and/or (iv) such other general principles as are deemed relevant by the court." *Wickham Co., Inc. v. Local Union No. 3, Int'l Bhd. of Elec. Workers, AFL–CIO,* 955 F.2d 831, 833–34 (2d Cir.1992). As Plaintiff suffered no financial loss, will be fully and fairly compensated by the

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2012 WL 1811628 (S.D.N.Y.)
**(Cite as: 2012 WL 1811628 (S.D.N.Y.))**

statutory and actual damages awarded herein, and never formally requested that prejudgment interest be included any statutory or actual damages calculation, the Court declines to award pre-judgment interest in the default judgment.

### III. Conclusion

The Clerk of Court is directed to enter the default of Defendant Sieger, Ross & Aguire, LLC in the record. A default judgment is entered against Defendant Sieger, Ross & Aguire, LLC In favor of Plaintiff Ruth Woods in the amount of $8,197.00, representing $1,000 in statutory damages under the FDCPA, $1,000 in actual damages under the FDCPA, and $6,197 in attorneys' fees and costs. The Clerk of Court is directed to close this case.

**SO ORDERED.**

S.D.N.Y.,2012.
Woods v. Sieger, Ross & Aguire, LLC
Not Reported in F.Supp.2d, 2012 WL 1811628 (S.D.N.Y.)

END OF DOCUMENT

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.